JAY SMITH (CA Bar No. 166105)
(Email: js@gslaw.org)
JOSHUA F. YOUNG (CA Bar No. 232995)
(Email: jyoung@gslaw.org)
**GILBERT & SACKMAN**
**A LAW CORPORATION**
3699 Wilshire Boulevard, Suite 1200
Los Angeles, California 90010
Telephone: (323) 938-3000
Fax: (323) 937-9139

RANDY RENICK (CA Bar No. 179652)
(Email: rrr@hadsellstormer.com)
CORNELIA DAI (CA Bar No. 207435)
(Email: cdai@hadsellstormer.com)
**HADSELL STORMER RENICK & DAI LLP**
128 North Fair Oaks Avenue, Suite 204
Pasadena, California 91103-3645
Telephone: (626) 585-9600
Fax: (626) 577-7079

Attorneys for Plaintiffs Michelle Kendig and Jim Kendig

[*Additional Counsel on next page*]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| MICHELLE KENDIG and JIM KENDIG, individually and on behalf of all similarly situated current and former employees,<br><br>            Plaintiffs,<br><br>v.<br><br>EXXONMOBIL OIL CORP.; EXXONMOBIL PIPELINE COMPANY; PBF ENERGY LIMITED; TORRANCE REFINING COMPANY, LLC; and DOES 1 through 10, inclusive,<br><br>            Defendants. | Case No.: 2:18-cv-9224 MWF (SSx)<br><br>Assigned to Hon. Michael W. Fitzgerald<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT; DECLARATIONS OF COUNSEL; AND EXHIBITS**<br><br>DATE:     April 13, 2020<br>TIME:     10:00 a.m.<br>PLACE:   Courtroom 5A |

# Table of Contents

I.    INTRODUCTION ........................................................................................1

II.   STATEMENT OF FACTS.......................................................................2
      A.   Procedural Background..................................................................2
      B.   Pertinent Factual Background.......................................................4
           1.   Operators Work on a Rotating Shift Schedule And Remain
                in Constant Communication to Keep the Refineries
                Working Continuously.........................................................4
           2.   Exxon's Policies Require Operators to Be On Duty
                Throughout Their Shifts and Do Not Provide Them with
                10-Minute, Off-Duty Rest Breaks. .....................................5
      C.   The Parties ....................................................................................6
           1.   Class Representatives .........................................................6
           2.   Defendants...........................................................................7
      D.   Discovery and Investigation Conducted by Plaintiffs .................7
      E.   Summary of Settlement Terms and Anticipated Schedule...........7
           1.   Class Certification ..............................................................7
           2.   Total Settlement Fund.........................................................8
           3.   Payment of Standard Claims ..............................................8
           4.   Additional Compensation for Active Litigants.....................9
           5.   Attorney's Fees and Costs ..................................................9
           6.   Payment of PAGA Claims ..................................................9
           7.   Administration of Claims..................................................10
           8.   Notice to the Class............................................................10
           9.   Proposed Schedule............................................................11

III.  THE PROPOSED CLASS SETTLEMENT SATISFIES ALL OF THE
      REQUIREMENTS FOR PRELIMINARY APPROVAL............................12
      A.   The Proposed Settlement Falls Within the Range of Possible
           Approval ......................................................................................13
      B.   The Proposed Class Settlement is the Product of Serious,
           Informed, Non-Collusive, and Good-Faith Negotiations...........15
      C.   The Settlement Does Not Offer Preferential Treatment to the
           Class Representatives or Other Members of the Class ...............16
      D.   The Settlement Agreement Has No Obvious Deficiencies.................17

IV.   CONDITIONAL CLASS CERTIFICATION IS APPROPRIATE................19
      A.   The Proposed Class is so Numerous that Joinder of All Members
           is Impracticable...........................................................................19
      B.   There are Questions of Law and Fact Common to the Class.............20
      C.   The Claims Alleged by the Named Plaintiffs are Typical of the
           Claims Which Could be Alleged by any Member of the Class .........20
      D.   The Named Plaintiffs Will Fairly and Adequately Protect the
           Interests of the Class ...................................................................21
      E.   Common Questions of Law and Fact Predominate and a Class
           Action is Superior .......................................................................21
           1.   Common Issues Predominate .................................................21
           2.   A Class Action is the Superior Method of Adjudication .........22

i

V.     NOTICE TO CLASS OF FINAL APPROVAL HEARING..........................23

    A.     The Proposed Settlement Notice Contains All of the Required
        Components ...................................................................................23

    B.     The Method of Notice is Appropriate .................................................24

VI.    CONCLUSION .................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257 (2016)......................................3

*Bautista v. Harvest Mgmt. Sub LLC*,

   No. CV1210004FMOCWX, 2013 WL 12125768 (C.D. Cal. Oct. 16, 2013) .............13

*Bellinghausen v. Tractor Supply Co.*,

   306 F.R.D. 245 (N.D. Cal. Mar. 19, 2015) ...................................................................17

*Benton v. Telecom Network Specialists, Inc.*,

   220 Cal. App. 4th 701 (2013) ......................................................................................22

*Bradley v. Networkers Int'l, LLC*,

   211 Cal. App. 4th 1129 (2012) ....................................................................................22

*Brinker Restaurant Corp. v. Superior Court*,

   53 Cal.4th 1004, 1032 (2012) .....................................................................................22

*Buzas v. Phillips 66 Company*, Case No. 4:17-cv-00163-YGR (March 6, 2018), Dkt.

   No. 47.............................................................................................................................17

*Chu v. Wells Fargo Invs., LLC*,

   *Nos. C* 05-4526 MHP, C 06-7924 MHP, 2011 U.S. Dist. LEXIS 15821 (N.D. Cal.

   Feb. 16, 2011) ...............................................................................................................17

*Churchill Vill., L.L.C. v. GE*,

   361 F.3d 566 (9th Cir. 2004) ..............................................................................12, 23

*Covillo v. Specialty's Café*,

   No. C-11-00594 DMR, 2014 U.S. Dist. LEXIS 29837,  (N.D. Cal. Mar. 6, 2014) ....17

*Craft v. City of San Bernardino*,

   624 F. Supp. 2d 1113 (C.D. Cal. 2008) ......................................................................15

*Dennis v. Kellogg Co.*,

   697 F.3d 858 (9th Cir. 2012) .......................................................................................18

*DirecTV*, 221 F.R.D. at 528........................................................................................14

NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT AGREEMENT; DECLS AND EXHIBITS/ Case No. 2:18-cv-9224 MWF (SSx)

*Dyer v. Wells Fargo Bank, N.A.*,
   303 F.R.D. 326 (N.D. Cal. 2014)..................................................................15

*Edwards v. The First Am. Corp.*,
   798 F.3d 1172 (9th Cir. 2015) ....................................................................22

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011)......................................................................20

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1988) ..............................................................12, 21, 23

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ......................................................................20

*Harris v. Vector Mktg. Corp.*,
   No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011....................13, 16

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ......................................................................21

*In re Optical Disk Drive Prods. Antitrust Litig.*,
   *No. 3:10-md-2143 RS,* 2016 WL 7364803, (N.D. Cal. Dec. 19, 2016).......................12

*Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*,
   654 F.3d 935 (9th Cir. 2011) ......................................................................15

*Lubin v. Wackenhut Corp.*,
   5 Cal. App. 5th 926 (2016) ........................................................................22

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004)..................................................................13

*Noll v. eBay, Inc.*,
   309 F.R.D. 593 (N.D. Cal. 2015)..................................................................12

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ......................................................................14

*Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*,

iv

779 F.3d 934 (9th Cir. 2015) ......................................................15, 16, 17

*Rodriguez v. W. Publ'g Corp.*,

563 F.3d 948 (9th Cir. 2009) ............................................................14, 17

*Sandoval v. Roadlink United States Pac., Inc.*,

No. EDCV 10-00973 VAP, 2011 WL 5443777 (C.D. Cal. Oct. 9, 2011)..................21

*Slaven v. BP America, Inc.*,

190 F.R.D. 649 (C.D. Cal. 2000) ............................................................20

*Spann v. J.C. Penney Corp.*,

314 F.R.D. 312 (C.D. Cal. 2016) ..........................................................19

*Staton v. Boeing Co.*,

327 F.3d 938 (9th Cir. 2003) ..............................................................16

*United Steel v. ConocoPhillips Co.*,

Case No. CV08-2068 PSG (FFMx) (C.D. Cal. May. 6, 2013) ..................................14

*United Steel v. ExxonMobil*,

Case No. BC393524 (Cal. 2009) ............................................................14

*Vizcaino v. Microsoft Corp.*,

290 F.3d 1043 n.6 (9th Cir. 2002) ..........................................................15

## **STATUTES**

28 U.S.C. § 1715 ........................................................................18, 19

## **RULES**

Fed. R. Civ. P. 23 .......................................................................19

Fed. R. Civ. P. 23(a) ....................................................................19

Fed. R. Civ. P. 23(a)(2) .................................................................20

Fed. R. Civ. P. 23(b) ....................................................................19

Fed. R. Civ. P. 23(b)(3) .............................................................19, 21

Fed. R. Civ. P. 23(c)(2)(B) ..........................................................23, 24

v

NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT AGREEMENT; DECLS AND EXHIBITS/ Case No. 2:18-cv-9224 MWF (SSx)

Fed. R. Civ. P. 23(e)(1) ...........................................................................23

**<u>REGULATIONS</u>**

IWC Wage Order 1-2001 §12(A)...............................................................22

**<u>OTHER AUTHORITIES</u>**

*Manual for Complex Litigation* (Fourth) § 21.632.........................................13

NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT AGREEMENT; DECLS AND EXHIBITS/ Case No. 2:18-cv-9224 MWF (SSx)

PLEASE TAKE NOTICE that on April 13, 2020, at 10:00 a.m., in Courtroom 5A, Plaintiffs Michelle Kendig and Jim Kendig, individually and on behalf of all similarly situated current and former employees (collectively, "Plaintiffs"), will and hereby move this Court for entry of the proposed order filed concurrently herewith:

1.      Preliminarily approving the class action settlement for $4,391,585;

2.      Preliminarily and conditionally certifying the class for purposes of settlement;

3.      Preliminarily appointing Plaintiffs Michelle Kendig and Jim Kendig as class representatives for purposes of settlement;

4.      Preliminarily appointing Hadsell Stormer Renick & Dai LLP and Gilbert & Sackman, A Law Corporation, as class counsel for purposes of settlement;

5.      Preliminarily approving the application for payment to class counsel of reasonable attorneys' fees of up to $1,097,896 (25% of the common fund) and reasonable costs up to $30,000;

6.      Preliminarily approving the payment of an "incentive award" in the amount of $7,500 to each of the two class representatives;

7.      Approving as to form and content the Proposed Notice of Class Action Settlement;

8.      Directing that the Notice of Class Action Settlement be mailed to the Settlement Class members; and

9.      Scheduling a fairness hearing on the question of whether the proposed settlement should be finally approved as fair, reasonable, and adequate as to the members of the Settlement Class.

This motion is brought pursuant to Federal Rule of Civil Procedure 23 on the grounds that the Settlement is fair, reasonable, and adequate, and that all requirements for class certification have been met.

This motion is based upon this Notice, the Memorandum of Points and

NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT AGREEMENT; DECLS AND EXHIBITS/ Case No. 2:18-cv-9224 MWF (SSx)

Authorities submitted herewith, the Declarations of Randy Renick and Joshua Young and exhibits filed herewith, the other records, pleadings and papers filed in this action, and upon such other documentary and oral evidence or argument as may be presented to the Court at the hearing on this motion.

DATED:  March 16, 2020          Respectfully submitted,

                                HADSELL STORMER RENICK & DAI LLP

                                _/s/Randy Renick_
                                Randy Renick
                                Attorneys for Plaintiffs Michelle Kendig and Jim Kendig


                                GILBERT & SACKMAN,
                                A LAW CORPORATION

                                _/s/Joshua F. Young_
                                Joshua Young
                                Attorneys for Plaintiffs Michelle Kendig and Jim Kendig

# I.  __INTRODUCTION__

Plaintiffs Michelle Kendig and Jim Kendig (collectively, "Plaintiffs") seek preliminary approval of the proposed class action settlement ("Settlement").  Attached as Exhibit 1 to the Declaration of Randy Renick filed concurrently herewith is a true and correct copy of the Joint Stipulation of Class Action Settlement and Release.

Plaintiffs further seek conditional certification for purposes of settlement of the following class: all current and former non-exempt hourly employees holding an Operator position while employed by ExxonMobil Oil Corporation, ExxonMobil Pipeline Company, PBF Energy Limited, and/or Torrance Refining Company LLC, or any of their affiliates, working at the Torrance refinery, distribution and pipeline facilities in the state of California, County of Los Angeles, at any time during the time period beginning September 18, 2014 and ending on the date of Preliminary Approval.

Subject to final approval of this Court, the parties have agreed to settle this action on an all-cash, non-revisionary basis for $4,391,585 (the "Settlement Fund"). Specifically, Defendants ExxonMobil Oil Corp. and ExxonMobil Pipeline Company (collectively, the "Exxon Defendants") agreed to pay a total of $1,491,372 and Defendants PBF Energy Limited and Torrance Refining Company LLC (collectively, the "TORC Defendants") agreed to pay a total of $2,900,213.  Furthermore, in addition to their proportionate share of the Settlement Fund, each Defendant will pay the employer's share of any payroll taxes, including FICA and FUDA.

Before settlement, Plaintiffs conducted extensive investigations of Defendants' wage and hour practices at their Torrance refinery, particularly in regard to the provision of rest breaks.  The investigation included interviews of Operators and review of relevant written materials, including workplace manuals, emergency procedures, rules and employee handbooks.  In addition, Defendants provided, and Plaintiffs reviewed Defendants' payroll and timecard data which included the exact number of shifts worked by each class member during the class period and the specific pay rate which applied to each of those shifts.  This discovery was sufficient to allow Plaintiffs to

NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT AGREEMENT; DECLS AND EXHIBITS/ Case No. 2:18-cv-9224 MWF (SSx)

thoroughly evaluate liability and determine damages and provide a sufficient basis upon which to obtain an outstanding settlement. The resolution was the result of arms-length negotiations and a full day mediation session with T. Warren Jackson, a highly skilled and experienced mediator.

Overall, the Settlement is an excellent result for the Settlement Class in light of all the relevant circumstances. Accordingly, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement and enter the proposed order filed concurrently herewith.

## II. STATEMENT OF FACTS

### A. Procedural Background

On September 18, 2018, Plaintiffs filed their complaint against Defendants in *Michelle Kendig et al., v. ExxonMobil Oil Corp.; ExxonMobil Pipeline Company; PBF Energy Limited; Torrance Refining Company, LLC* in the Los Angeles Superior Court (the "Complaint" in the "Class Action").[1] The Complaint alleged the following causes of action: (1) Failure to authorize and permit duty free rest periods; (2) failure to furnish accurate wage statements; (3) the California Private Attorneys General Act; and (4) unfair competition. Plaintiffs sought unpaid wages, statutory penalties, restitution, attorneys' fees and costs, interest, and injunctive and declaratory relief for the time period from September 18, 2014 to the present. Declaration of Randy Renick ("Renick Decl.") at ¶3.

---

[1] Gilbert & Sackman and Hadsell Stormer Renick & Dai have filed similar lawsuits against: Chevron, *Clack v. Chevron Corporation*, Case No. BC649514, (Los Angeles Superior Court, Judge Amy D. Hogue); Tesoro, *Valliere v. Tesoro Refining and Marketing Co.*, 3:17-cv-00123 (Northern District of California, Judge Jon S. Tigar); Phillips 66, *Buzas et al. v. Phillips 66*, Case No. 4:17:cv-00163 (Northern District of California, Judge Yvonne Gonzalez Rogers); and Shell, *Berlanga v. Equilon Enterprises LLC dba Shell Oil Products US, et al.*, Case No. 4:17-cv-00282-MMC (Northern District of California, Judge Maxine Chesney). Final Approval of the $5,500,000 *Phillips 66* settlement was granted on March 8, 2018. Final approval of the $7,750,000 *Shell* settlement was granted on January 22, 2019. Final approval in the *Chevron* matter is pending. Preliminary approval in the *Tesoro* matter is pending. Declaration of Joshua F. Young, ¶ 5.

NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT AGREEMENT; DECLS AND EXHIBITS/ Case No. 2:18-cv-9224 MWF (SSx)

On October 26, 2018, TORC Defendants removed the matter to the United States District Court for the Central District of California, Case No. 2:18-cv-9224 MWF. On February 1, 2019, Defendants answered the Complaint, denying each and all of the claims alleged by Plaintiffs in the Class Action. Specifically, Defendants ExxonMobil Pipeline Company and PBF Energy Limited deny that they, or either of them, have ever employed operators at the Torrance Refinery. All Defendants deny that Operators at the Torrance Refinery were or are required to carry radios or other communication devices during their rest breaks. In addition, all Defendants deny that Plaintiffs, or any of them, are entitled to interest on allegedly unpaid premium pay. Moreover, TORC Defendants take the position that even if they, or either of them, were potentially liable on any claim Plaintiffs have asserted, the Class Period ended September 20, 2018, when the California State Legislature enacted Labor Code section 226.75 in response to *Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257 (2016), and supplied a limited exemption to the "relieved of all duty" rest break mandate insofar as a refinery employer requires an employee in a safety-sensitive position to carry an emergency communication device, to remain on employer premises, to monitor communications, and/or to be available to respond to emergencies. Furthermore, the TORC Defendants take the position that notwithstanding the current conflict among California appellate courts, missed rest periods and alleged failure to pay premium wages do not give rise to *penalty* claims.

Both prior and subsequent to the filing of the Complaint, Plaintiffs conducted a complete investigation of Defendant's wage and hour practices with regard to rest breaks so as to evaluate liability and damages. Plaintiffs reviewed extensive payroll and timecard data which allowed Plaintiffs to accurately determine the total amount of damages for which Defendants would be liable were Plaintiffs successful in their efforts to certify the class and prevail at trial. Renick Decl., at ¶ 6.

On August 23, 2019, the Parties participated in mediation with T. Warren Jackson

NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT AGREEMENT; DECLS AND EXHIBITS/ Case No. 2:18-cv-9224 MWF (SSx)

in Los Angeles, California, and were able to reach a settlement of all claims.  The Settlement was ultimately reduced to a written settlement agreement and executed by all parties. Renick Decl., Exhibit 1.

**B.  Pertinent Factual Background**

**1.  Operators Work on a Rotating Shift Schedule And Remain in Constant Communication to Keep the Refineries Working Continuously**

The Torrance Refinery operates continuously, 24 hours a day, seven days a week. The oil refining process is a dangerous operation that involves hazardous substances and has the potential for catastrophic consequences if something goes wrong.  Because the refining of crude oil is a continuous production process, Defendants need employees to operate and/or monitor the process at all times; thus, Operators at the Torrance Refinery work 12-hour rotating "continuous" shifts on four schedules.

There are 10 processing units at the Torrance Refinery, including the Tank Farm, Oil Movements, Sulfur Recovery (SRU), Hydrotreater (HDT), Hydroprocessing (HDC/PTR), Alkylation (ALKY), Utilities (UTL), Coker, Crude and Fluid Catalytic Converter (FCC).  Each unit has one Console Operator and one Head Operator except for the Coker unit, which has two Head Operators.[2]  Console Operators work together in one room, a location separate from their units.  They are responsible for monitoring tank, tower, and oil levels, temperatures for equipment and refining processes, flow levels, lubrication, and pressure readings for different processes and equipment, and making adjustments to processes and equipment, as needed, from computer board terminals.

Field Operators generally take direction from Console Operators and make adjustments to the production process from the field.  Thus, Console Operators and

---

[2] In addition to the basic responsibilities of an Operator, a Head Operator has additional operational and administrative duties, including maintenance backlog, monitoring reliability, conducting regular safety meetings, conducting emergency drills, and monitoring training of individual Operators in his or her unit.

NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT AGREEMENT; DECLS AND EXHIBITS/ Case No. 2:18-cv-9224 MWF (SSx)

Field Operators must coordinate their activities to ensure that the refining process operates safely and efficiently. Field Operators are also responsible for monitoring equipment with readings that do not have a signal to the console. In addition, they must be available to contractors working in their units and provide them with work direction as well as other assistance.

In order to constantly monitor the refining process, make adjustments to equipment, respond to alarms, be ready to respond immediately in the event of fire, medical emergency, environmental contamination, and unit upset, and generally maintain the safe and stable operation of their units, Plaintiffs and the other Operators were required to remain attentive, carry radios, and be reachable at all times during their shifts. Indeed, signs are posted in the processing areas stating: "refinery radios required." "Unit radios" are also specifically identified as necessary equipment in the guidelines for operating procedures in the different units.

Plaintiffs and the other Operators were also required to remain in communication with supervisors and other employees working in their units throughout their shifts. This responsibility was of such importance to the role of Operator that it is specifically identified in materials for operator trainees as one of 10 basic responsibilities of an Operator.

Thus, Plaintiffs and the other Operators never received off-duty rest breaks because they were constantly and continuously responsible for their units.

**2.    Exxon's Policies Require Operators to Be On Duty Throughout Their Shifts and Do Not Provide Them with 10-Minute, Off-Duty Rest Breaks.**

Defendants require Operators to remain on the refinery premises and in or near their work areas throughout their shifts. Operators who leave their area or unit while still on their shift must carry their radios, and they are not provided with any relief that would allow them to take uninterrupted, off-duty rest breaks. They are not permitted to do anything during their shifts that would interfere with their ability to monitor their

units, respond to radio calls, alarms, or unit upsets, and perform other work duties.

Defendants maintained refinery-wide policies that require that Operators remain in radio communication at all times, remain on the refinery premises, and refrain from sleeping, reading non-work-related materials, using headphones, watching movies, and sleeping. The "Torrance Refinery Working Rules" issued in April 2011 identified "[s]leeping, attempting to sleep, or loafing on Company time" as "neglect of duty" and grounds for discharge or other discipline. *See* Renick Decl., Exhibit 2. As recently as September 2018, a Head Operator was disciplined for "sleeping on duty" with a two-day suspension without pay when he was attempting to take a rest break. *See* Renick Decl., Exhibit 3; *see* also Renick Decl., Exhibit 4, PBF Employment Handbook, PBF 1971. The reason given was: "you were observed sleeping by your Supervisor while in your Head Operator Office." Renick Decl., Exhibit 3, p. 1.

As Defendants have no policies or practices which provide relief to Operators of all their duties, Operators remain on duty throughout their shifts and do not receive compliant rest breaks.

C. **The Parties**

1. **Class Representatives**

Plaintiffs Michelle Kendig and Jim Kendig are both currently employed by Defendants as Operators at the Torrance Refinery. Plaintiff Michelle Kendig is an Operator in the Tank Farm unit. She has worked at the Torrance Refinery for approximately 21 years, during which time she has also worked in the unit at the refinery. Since 2015, she has held the position of Head Operator. Plaintiff Jim Kendig works as an Operator in the Hydrotreater unit at the Torrance Refinery. He has been an Operator for approximately 25 years, during which time she has also worked in the Coker and Sulfur Recovery units at the refinery.

Since September 18, 2014, Plaintiffs have worked their shifts without receiving off-duty rest periods because throughout their shifts Plaintiffs and the other Operators are

required to monitor the refining process, respond to upsets and critical events, and maintain the safe and stable operation of their units.  In order to do so, Plaintiffs and the other Operators are required to remain attentive, carry radios, and be reachable at all times during their shifts.  *Id*. at ¶ 10.

### 2. Defendants

Defendants ExxonMobil Oil Corp. and ExxonMobil Pipeline Company (collectively, "Exxon Defendants") operated refinery, distribution, and pipeline facilities in or around Torrance, California (the "Torrance Refinery") until about July 1, 2016.  Thereafter, Defendants PBF Energy Limited and Torrance Refining Company, LLC (collectively, "TORC Defendants") acquired the Torrance Refinery from Exxon Defendants and have operated the facility since July 1, 2016.

### D. Discovery and Investigation Conducted by Plaintiffs

Plaintiffs conducted extensive investigation of Defendant's wage and hour practices at the Torrance Refinery, particularly in regard to the provision of rest breaks.  Plaintiffs interviewed operators at the Torrance refinery and reviewed thousands of pages of relevant written materials, including employee handbooks, training materials and emergency protocol materials.  In addition, Defendants provided, and Plaintiffs reviewed Defendants payroll and timecard data containing all of the shifts worked by each class members during the class period and the specific pay rate which applied to each of those shifts.  Based on this extensive investigation and review of discovered materials, Plaintiffs were able to thoroughly evaluate liability and determine damages.  Plaintiffs' due diligence provided a sufficient basis upon which to obtain an outstanding settlement on behalf of the class.  Renick Decl. at ¶ 6.

### E. Summary of Settlement Terms and Anticipated Schedule

### 1. Class Certification

The settlement class stipulated to by the parties consists of the following: All current and former non-exempt hourly employees holding an Operator position while

employed by ExxonMobil Oil Corporation, ExxonMobil Pipeline Company, PBF Energy Limited, and/or Torrance Refining Company LLC, or any of their affiliates, working at the Torrance refinery, distribution and pipeline facilities in the state of California, County of Los Angeles, at any time during the time period beginning September 18, 2014 and ending on the date of Preliminary Approval. Renick Decl. at ¶ 12.

## 2. Total Settlement Fund

The total settlement amount is Four Million and Three Hundred Ninety-One Thousand Five Hundred Eighty-Five Dollars ($4,391,585). Defendants are also obligated to pay their share of payroll taxes, including FICA and FUDA. The settlement is non-reversionary. Uncashed settlement check(s) will be awarded *cy pres* to the Loyola Law School Workers' Rights Clinic. Renick Decl., Exh. 1 at ¶ 93.

## 3. Payment of Standard Claims

The primary mechanism for Settlement involves cash payment to members of the settlement class based on the number of Qualifying Shifts worked by each class member during the class period. A Qualifying Shift is: (1) a shift of at least twelve (12) continuous hours worked as an Operator; or (2) a shift scheduled for at least twelve (12) continuous hours, worked as an Operator for a period of at least three and one-half (3½) hours, and for which the class member has not previously been paid an hour of premium pay for a missed or interrupted rest period for the subject workday. Renick Decl. at ¶ 16.

Each participating class member will receive one Credit for each Qualifying Shift worked during the class period, provided, that any class member who has worked at least one (1) Qualifying Shift but no more than twenty-five (25) Qualifying Shifts will receive twenty-five (25) credits. The Administrator will total up all the credits for all participating class members and divide the "Net Settlement Proceeds" (i.e., the Settlement Fund minus the total of (a) Court-approved Attorneys' Fees and Costs; (b) Court-approved Service Awards to the Named Plaintiffs; (c) Court-approved

Administrative Costs; and (d) Payment to the LWDA for PAGA penalties the amount) by that sum. The result will be a dollar value for each Credit, (the "Individual Shift Value"). Each class member's settlement payment will be calculated by multiplying the class member's total number of Credits by the Individual Shift Value. Renick Decl. at ¶ 16.

### 4. Additional Compensation for Active Litigants

In recognition of the risks and burdens undertaken by the Named Plaintiffs and those class members who actively participated in the litigation, mediation and settlement of this case, the Agreement provides additional compensation in an amount not to exceed $7,500 for each of the two named Plaintiffs. This payment shall be in addition to whatever portion of the settlement proceeds each such individual is otherwise entitled to receive. The enhancements are intended to compensate these individuals fairly in relationship to the rest of the class in light of the additional burdens and risks they have undertaken by assisting in the prosecution of the lawsuit, including their participation in the mediation session with T. Warren Jackson in Los Angeles, California, and their active assistance with the litigation. The Named Plaintiffs have also agreed to a general release of all claims they might have against Defendants. Renick Decl., Exh. 1 at ¶ 65.

### 5. Attorney's Fees and Costs

The settlement agreement provides for an award of reasonable attorney's fees and costs from the common fund. Renick Decl. at ¶ 19. Plaintiffs intend to seek an award of 25% of the total settlement fund (or $1,097,896) in addition to the reimbursement of litigation costs of approximately $30,000, and the costs of claims administration, estimated at $20,000. *Id.* at ¶¶ 19-20.

### 6. Payment of PAGA Claims

The total amount of the Settlement Fund allocated to PAGA penalties shall be fifty thousand dollars ($50,000), with seventy-five percent (75%) of the PAGA penalties ($37,500) being paid to the California Labor and Workforce Development Agency

("LWDA") and twenty-five percent (25%) of the PAGA penalties ($12,500) being paid to Settlement Class Members who do not opt out. Renick Decl., Exh. 1, at ¶ 49.

## 7. Administration of Claims

The parties have agreed to retain CAC Services Group, LLC, ("CAC" or "Administrator"), of Eden Prairie, Minnesota, to act as the impartial claims administrator. CAC will be retained to calculate each class member's share, determine the amount of payroll taxes owed by Defendants, send out notice to the class members, maintain a website containing the key documents in the case, including the settlement agreement, class notice and motion for attorney's fees, to resolve any challenges any party lodges to all or part of a particular claim, and to mail the settlement checks to the authorized claimants. CAC's fees, estimated at $20,000, are to be paid out of the settlement fund. Renick Decl., Exh. 1, ¶ 10.

## 8. Notice to the Class

The Settlement Agreement contemplates, among other things, that this Court will conditionally certify a settlement class and grant preliminary approval of the settlement. After preliminary approval and class certification, the Settlement Agreement requires that the Notice of Class Action Settlement ("the Notice") be sent via first class mail to class members within 14 calendar days after Defendants provide to the Claims Administrator a Class List with pertinent information of each potential class member. The Notice will inform potential class members the terms of the Settlement Agreement, their right to dispute the estimated settlement payment amount, their right to opt out of the class, their right to object to the settlement, and their right to be heard at the final hearing on the fairness of the settlement. Renick Decl., Exh. 1, ¶ 78. The Notice will provide the address for a website maintained by the claims administrator that will have links to the Notice, motions for approval and attorneys' fees, and any other important documents in the case and instructions on how to access the case docket via PACER or in person at the court. Renick Decl., Exh. 1(A), p. 10.

Each member of the Class will be provided an individualized Notice form that

will include the number of Qualifying Shifts worked from September 18, 2014 to the preliminary approval date and the number of credits which form the basis for determining each individual claimant's share of the settlement proceeds. In addition, each Notice will also include each class member's expected share of the settlement. Renick Decl., Exh. 1(A), p. 1.

The Notice advises each class member that they have three (3) options. Those options are: (1) do nothing and receive payment; (2) request exclusion in order to be excluded from the settlement; or (3) object to the proposed settlement by filing a written objection and appearing at the Motion for Final Approval. Renick Decl., Exh. 1(A), p. 7. Additionally, the Notice explains how to file a dispute regarding the estimated settlement payment amount, the number of Qualifying Shifts, or the applicable credits. *Id.*

## 9. Proposed Schedule

The following schedule sets forth a proposed sequence for the relevant dates and deadlines, assuming this Court grants preliminary approval of the Settlement. This schedule is also stated in the proposed Order filed concurrently herewith.

| April 27, 2020. (10 business days after Preliminary Approval): | Defendants to provide to the Claims Administrator and Class Counsel a "class list" and the following information for each Class Member: (a) name; (b) last-known address; (c) e-mail address, if available; (d) number of Qualifying Shifts worked; and (e) for the Exxon Defendants, post, as follows: (i) for the Exxon Defendants, for the period beginning September 18, 2014 and ending June 30, 2016 (the "Exxon Class Period"); and (ii) for the TORC Defendants, for the period beginning July 1, 2016 and ending on the Preliminary Approval Date (the "TORC Class Period"). |
| --- | --- |
| May 11, 2020. (14 calendar days after Defendants provide to Claims Administrator the class list: | Class Notice mailed to all Class Members. |

11

NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT AGREEMENT; DECLS AND EXHIBITS/ Case No. 2:18-cv-9224 MWF (SSx)

| May 27, 2020. (14 days prior to Objection Deadline): | Plaintiffs' Motion for Attorney's Fees and Costs is Posted on Website. |
|---|---|
| June 25, 2020. (45 calendar days after Class Notice is mailed): | Last day for class members to file written objections with the Court or to opt-out of the settlement. |
| June 29, 2020.: | Plaintiffs to file Motion for Final Approval. |
| July 13, 2020, 10:00 a.m.: | Final Fairness and Motion for Fees and Costs Hearing. |
| July 27, 2020. (10 business days after Final Approval Order): | Defendants to provide the Social Security Number of each Participating Class Member. |

## III. THE PROPOSED CLASS SETTLEMENT SATISFIES ALL OF THE REQUIREMENTS FOR PRELIMINARY APPROVAL

"A presumption in favor of voluntary settlement agreements exists, and this presumption is especially strong in class actions and other complex cases . . . because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *In re Optical Disk Drive Prods. Antitrust Litig., No. 3:10-md-2143 RS,* 2016 WL 7364803, at *4 (N.D. Cal. Dec. 19, 2016) (internal citation omitted); see also *Churchill Vill., L.L.C. v. GE,* 361 F.3d 566, 576 (9th Cir. 2004) (Strong judicial policy favors class action settlements); *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1988) (the court's role is to determine whether the settlement terms fall within a reasonable range of possible settlements, with "proper deference to the private consensual decision of the parties" to reach an agreement rather than to continue litigating).

Federal Rule of Civil Procedure 23(e) requires court approval of a class action settlement. Approval is a two-step process under Rule 23(e), "the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Noll v. eBay, Inc.,* 309 F.R.D. 593, 602 (N.D. Cal. 2015) (internal citations omitted); *see also Hanlon,* 150 F.3d at 1027 (after preliminary approval and notice to the class, the Court reviews

12

the fairness of the settlement at final approval); *Manual for Complex Litigation* (Fourth) § 21.632 (explaining that courts "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing").

Courts in the Central District of California have found preliminary approval of a settlement appropriate when the settlement: (1) falls within the range of possible approval; (2) appears to be the product of serious, informed, non-collusive negotiations; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) has no obvious deficiencies. *Bautista v. Harvest Mgmt. Sub LLC*, No. CV1210004FMOCWX, 2013 WL 12125768, at *7 (C.D. Cal. Oct. 16, 2013) (quoting *Harris v. Vector Mktg. Corp.,* No. C-08-5198 EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011)). "Closer scrutiny is reserved for the final approval hearing." *Harris*, 2011 WL 1627973, at *7.

Preliminary approval is proper here because this Agreement falls within the range of reasonable approval, is the product of more than six months of arms-length, non-collusive negotiations by experienced class counsel, does not improperly grant preferential treatment to class representatives, and has no obvious deficiencies. Renick Decl. at ¶¶ 5-9.

A.     **The Proposed Settlement Falls Within the Range of Possible Approval**

The recovery here is fair, reasonable, and adequate in light of the continued risk, costs, and uncertainty of litigation. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal citation omitted). Approval of a class settlement is justified where "the settlement terms compare favorably to the uncertainties associated with continued litigation regarding the contested issues in th[e] case." *Id.* at 526. *See also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615,

624 (9th Cir. 1982) ("Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation.").

The settlement provides for the payment of $4,391,585. Based on Plaintiffs' assessment of damages and the review of timecard and payroll data encompassing all shifts during the class period, the settlement represents 56% of the damages incurred up to the time of the mediation. Renick Decl. at ¶ 28. This is an outstanding settlement and is above the range of reasonableness. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (finding settlement amounting to 10% of estimated damages fair and reasonable).

In addition, Class Counsel have many years of experience in class action and wage and hour law and extensive experience representing this class in wage and hour class actions against Defendants in the oil industry, including ExxonMobil.[3] Class Counsel recommends the proposed settlement and believe that it is in the best interests of the Settlement Class. (Renick Decl., ¶ 29; Declaration of Joshua Young at ¶ 9). "Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation. Thus, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *DirecTV*, 221 F.R.D. at 528 (internal quotations, alterations, and citations omitted).

---

[3] In addition to the cases mentioned earlier, Hadsell Stormer Renick & Dai and Gilbert & Sackman served as class counsel in a case involving Phillips 66 refineries in California in *United Steel v. ConocoPhillips Co.*, Central District of California Case No. 08-2068-PSG (final approval granted in 2013). Gilbert & Sackman serves as counsel to the employees' union, the United Steelworkers. Young Decl. at ¶ **. Gilbert & Sackman also represented plaintiffs in a meal break lawsuit, *United Steel v. ExxonMobil*, Superior Court of the State of California, County of Los Angeles Case No. BC393524 (final approval granted in 2009).

NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT AGREEMENT; DECLS AND EXHIBITS/ Case No. 2:18-cv-9224 MWF (SSx)

The Settlement Agreement provides for a reasonable award of attorney's fees. Plaintiffs intend to seek an award of 25% ($1,097,896) of the settlement. The fee award contemplated by the Settlement Agreement in this case is presumptively reasonable under Ninth Circuit precedent. *See Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*, 779 F.3d 934, 949 (9th Cir. 2015) (in the Ninth Circuit, 25% is the benchmark attorney's fee award in common fund cases); see also *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 942 (9th Cir. 2011) (courts typically calculate 25% of the [common] fund as the "benchmark" for a reason-able fee award"). Plaintiffs expect their lodestar at the time of Final Approval to be in excess of $500,000 resulting in a multiplier of approximately 2.0. Renick Decl. at ¶ 19. A multiplier of 2.0 falls within the Ninth Circuit's presumptively acceptable range of 1.0-4.0. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002); s*ee also Dyer v. Wells Fargo Bank, N.A*., 303 F.R.D. 326, 334 (N.D. Cal. 2014) (applying 2.83 multiplier); *Craft v. City of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (court ordered attorneys' fee of 25% of the settlement fund, where lodestar cross-check showed a multiplier of 5.2).

For the foregoing reasons, Class Counsel strongly believe that the settlement is a fair, reasonable, and an adequate resolution of the claims of the Settlement Class and is preferable to continued litigation.

**B.    The Proposed Class Settlement is the Product of Serious, Informed, Non-Collusive, and Good-Faith Negotiations**

Settlement negotiations in this case were conducted over more than six months and, at all times, were adversarial, non-collusive, in good faith, and at arms' length. Both during and after the mediation, the Parties continued to exchange written proposals and discuss settlement terms through their counsel.

Class Counsel worked closely with the Named Plaintiffs and other class members to gain knowledge about the rest period policies and practices and the general working conditions of operators at the work sites included in the proposed settlement. Class

Counsel sought and obtained input from the Named Plaintiffs in this case regarding the terms of a proposed settlement. Renick Decl. at ¶ 27.

Thus, the proposed class settlement is the result of serious, informed, non-collusive, and good-faith negotiations.

### C. The Settlement Does Not Offer Preferential Treatment to the Class Representatives or Other Members of the Class

The settlement does not offer preferential treatment to the class representatives or other members of the class as the net settlement will be fairly distributed amongst the class on a pro rata basis and a Credit will be given to each Qualifying Shift[4] worked by a member of the Settlement Class during the class period. Any Class Member who has at least one Qualifying Shift but no more than twenty-five (25) Qualifying Shifts will be rounded up to receive at least twenty-five (25) Credits. The value of each Credit, (the "Individual Shift Value"), will equal the Net Settlement Proceeds divided by the total number of Credits for all Class Members. Each Settlement Class Member's "Individual Settlement Award" shall equal that individual's total number of Credits multiplied by the Individual Shift Value. Renick Decl., Exh. "1," ¶¶ 45-61.

The settlement agreement authorizes an incentive award to each of the two Named Plaintiffs of $7,500. "[T]he Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable." *Harris*, 2011 WL 1627973, at *9 (citing *Staton v. Boeing Co.,* 327 F.3d 938, 977 (9th Cir. 2003)); *see also Resnick*, 779 F.3d at 943 ("Incentive payments to class representatives do not, by themselves, create an impermissible conflict between class members and their representatives."). Courts routinely approve incentive awards to compensate Named Plaintiffs for the work done on behalf of the class, the risks they

---

[4] A Qualifying Shift is: (1) a shift of at least twelve (12) continuous hours worked as an Operator; or (2) a shift scheduled for at least twelve (12) continuous hours, worked as an Operator for a period of at least three and one-half (3½) hours, and for which the class member has not previously been paid an hour of premium pay for a missed or interrupted rest period for the subject workday. Renick Decl. at ¶ 16.

NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT AGREEMENT; DECLS AND EXHIBITS/ Case No. 2:18-cv-9224 MWF (SSx)

incurred during the course of the class action litigation, and sometimes, to recognize their willingness to act as a private attorney general. *Resnick,* 779 F.3d at 943; *see also Rodriguez*, 563 F.3d at 958.

Here, the Named Plaintiffs have participated in the successful prosecution of the Class Action, including taking the risks of serving as the named representatives, providing factual information and documentation necessary to the prosecution of the Class Action, attending mediation, and maintaining active contact with Class Counsel. In exchange for the service awards, the Named Plaintiffs have agreed to execute a General Release as to any and all claims they might have against Defendants and the Released Parties.

Moreover, the size of the incentive awards – $7,500 to each of the two Named Plaintiffs – is consistent with the range of incentive awards approved by federal courts of this circuit in class action cases. *See Bellinghausen v. Tractor Supply Co*., 306 F.R.D. 245, 266 (N.D. Cal. Mar. 19, 2015) (courts typically approve incentive awards up to $10,000); *see also Covillo v. Specialty's Café,* No. C-11-00594 DMR, 2014 U.S. Dist. LEXIS 29837, at *28-29 (N.D. Cal. Mar. 6, 2014) (ordering an $8,000 incentive award for each of the three named plaintiffs); *Chu v. Wells Fargo Invs., LLC, Nos. C* 05-4526 MHP, C 06-7924 MHP, 2011 U.S. Dist. LEXIS 15821, at *15-16 (N.D. Cal. Feb. 16, 2011) (awarding a $10,000 incentive award to two named plaintiffs). Judge Gonzalez Rogers approved $7,500 incentive awards to the named plaintiffs in a similar rest break case filed by Hadsell Stormer & Renick and Gilbert & Sackman against Phillips 66 Company, *Buzas v. Phillips 66 Company*, Case No. 4:17-cv-00163-YGR (March 6, 2018), Dkt. #47.

### D.    The Settlement Agreement Has No Obvious Deficiencies

The settlement agreement has no obvious deficiencies. As discussed throughout, the recovery here, constituting 56% of the estimated damages at the time of mediation, is fair, reasonable, and adequate in light of the continued risk, costs, and uncertainty of litigation. The incentive awards for the two Named Plaintiffs in the amount of $7,500

each are within the range of incentive awards approved by other federal courts in class action cases. The attorneys' fee provision, seeking an award of 25% of the common fund, is the benchmark percentage in the Ninth Circuit, and the Motion for Attorney's Fees will be made available on the claims administrator's website for a reasonable period of time of no less than 14 calendar days prior to the deadline for class members to file an objection to the Settlement Agreement. Renick Decl. Exh. 1, ¶ 81.

Moreover, as discussed below, the proposed Settlement Notice and the manner of notice agreed upon by the Parties is the best notice that is practicable, as required under Federal Rule of Civil Procedure Rule 23(c). The proposed Notice adequately describes the nature of the action, the definition of the class certified, the class claims, that a class member may enter an appearance through an attorney if the member so desires, that the court will exclude from the class any member who requests exclusion, the time and manner for requesting exclusion, and the binding effect of a class judgment on members under Rule 23(c). Renick Decl., Exh. 1(A).

The Settlement is non-reversionary and any uncashed checks will be awarded *cy pres* to the Loyola Law School Workers' Rights Clinic. The Loyola Law School Workers' Rights Clinic is a proper *cy pres* awardee because the nexus between the Workers' Rights Clinic and the California Labor laws at issue in this care is sufficiently direct. *See Dennis v. Kellogg Co.,* 697 F.3d 858, 865 (9th Cir. 2012) (a *cy pres* award should be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class). Renick Decl. ¶ 18.

Finally, the Settlement Agreement provides that within ten (10) days after the filing of the Motion for Preliminary Approval, Defendants shall comply with the "Notification of Settlement" requirements of the Class Action Fairness Act (28 U.S.C. § 1715). Defendants shall provide Class Counsel with a copy of the notices provided to the appropriate state officials, as defined under 28 U.S.C. § 1715. Prior to the date set

for the preliminary approval hearing, Defendants shall file a proof of service with the Court indicating compliance with 28 U.S.C. § 1715.  Renick Decl., Exh. 1 ¶ 75.

## IV.   <u>CONDITIONAL CLASS CERTIFICATION IS APPROPRIATE</u>

When the parties enter into a settlement agreement before the district court certifies the class, the Court, at the preliminary approval stage, "may make either a preliminary determination that the proposed class action satisfies the criteria set out in [Federal Rule of Civil Procedure] Rule 23 or render a final decision as to the appropriateness of class certification."  *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 318 (C.D. Cal. 2016).

Conditional class certification of a settlement class is appropriate if the class action meets the four prerequisites identified in Rule 23(a), numerosity, commonality, typicality, and adequacy of representation, and additionally fits within one of the three subdivisions of Rule 23(b).  Here, Plaintiffs have provided a summary of the arguments and evidence which support conditional certification of the class for purposes of settlement, showing that there is numerosity, commonality, typicality, and adequacy of representation, and under Rule 23(b)(3), that common questions of law and fact predominate.

### A.   The Proposed Class is so Numerous that Joinder of All Members is Impracticable

The proposed Settlement Class is defined as follows: " All current and former non-exempt hourly employees holding an Operator position while employed by ExxonMobil Oil Corporation, ExxonMobil Pipeline Company, PBF Energy Limited, and/or Torrance Refining Company LLC, or any of their affiliates, working at the Torrance refinery, distribution and pipeline facilities in the state of California, County of Los Angeles, at any time during the time period beginning September 18, 2014 and ending on the date of Preliminary Approval."  Renick Decl. at ¶ 12.  The Settlement Class includes approximately 275 members.  *Id.*  The proposed class is, therefore, so large that joinder is not practicable and disposition of their claims as a class will benefit

the parties and the Court. *See Slaven v. BP America, Inc.,* 190 F.R.D. 649, 654 (C.D. Cal. 2000) ("As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members. . . .").

## B. There are Questions of Law and Fact Common to the Class

To show commonality, a plaintiff "must demonstrate that there are questions of fact and law that are common to the class." *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 981 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(a)(2)). "The requirements of Rule 23(a)(2) have been construed permissively, and all questions of fact and law need not be common to satisfy the rule." *Id*. at 981.

Here, Plaintiffs assert that there are common questions of fact and law arising from the putative class members' employment at Defendants' Torrance Refinery, including whether Defendants failed to authorize and permit class members to take rest periods in accordance with applicable California law because they failed to relieve class members during their rest periods of all work duties.

## C. The Claims Alleged by the Named Plaintiffs are Typical of the Claims Which Could be Alleged by any Member of the Class

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992).

The claims alleged by the Named Plaintiffs arise out of the challenged practices and common courses of conduct by Defendants and are based on the same legal theories as the claims of the putative class members; thus they are typical of those claims which could be alleged by any member of the proposed class. The legal issues as to which California laws are violated by such conduct apply equally to Named Plaintiffs and the putative class members. Further, the relief sought by Named Plaintiffs is typical of the relief which would be sought by each member of the proposed class if they were to file separate actions.

NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT AGREEMENT; DECLS AND EXHIBITS/ Case No. 2:18-cv-9224 MWF (SSx)

**D.** **The Named Plaintiffs Will Fairly and Adequately Protect the Interests of the Class**

To determine whether named plaintiffs will adequately represent a class, courts look to (a) whether the named plaintiffs and their counsel have any conflicts of interest with other class members, and (b) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

Here, Plaintiffs assert that they are proper representatives of the proposed class because they will fairly and adequately represent and protect the interests of all putative class members as neither the Named Plaintiffs nor their counsel have any apparent conflicts of interest with the absent members of the Settlement Class and their claims arise out of the same set of facts as those of the Settlement Class. The Named Plaintiffs have been committed to the vigorous prosecution of this case and have reached a resolution they believe is in the best interests of the Settlement Class. Moreover, Plaintiffs' counsel, Hadsell Stormer Renick & Dai LLP and Gilbert & Sackman, A Law Corporation, are highly experienced class counsel, having handled dozens of similar wage and hour class actions, as well as other types of class and complex litigation. Renick Decl. ¶ 14; Young Decl. ¶¶2-5.

**E.** **Common Questions of Law and Fact Predominate and a Class Action is Superior**

Pursuant to Rule 23(b)(3), class adjudication is proper if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and [] a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Sandoval v. Roadlink United States Pac., Inc*., No. EDCV 10-00973 VAP, 2011 WL 5443777, at *2 (C.D. Cal. Oct. 9, 2011); Fed. R. Civ. P. 23(b)(3).

**1.** **Common Issues Predominate**

"Common issues predominate over individual issues when the common issues

21

represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Edwards v. The First Am. Corp.*, 798 F.3d 1172, 1182 (9th Cir. 2015).

Under California law, an employer is required to authorize and permit all employees to take duty free rest periods of 10 minutes per four hours of work or major fraction thereof. Wage Order 1-2001 §12(A); *see Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1032 (2012). Plaintiffs' main claim in this case is that Defendants' lack of a rest break policy or practice that authorizes and permits duty-free rest breaks and uniform failure to provide such breaks is a violation of California law. This issue is suitable for class adjudication because it pertains to all members of the class. *See Bradley v. Networkers Int'l, LLC*, 211 Cal. App. 4th 1129, 1150 (2012) ("The lack of a meal/rest break policy and the uniform failure to authorize such breaks are matters of common proof."); *Benton v. Telecom Network Specialists, Inc.,* 220 Cal. App. 4th 701, 728-29 (2013) (lack of a break policy is common evidence that the employer failed to provide breaks).

Plaintiffs assert that Defendants' defense that they permitted employees duty-free rest periods is also common to the class. *See Lubin v. Wackenhut Corp.*, 5 Cal. App. 5th 926, 957 (2016) (The employer's "defense that it had a policy or practice authorizing rest breaks is susceptible to classwide resolution.").

### 2. A Class Action is the Superior Method of Adjudication

Class resolution is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the settlement context. Plaintiffs assert that the prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for Defendants, and resulting in the impairment of putative class members' rights and the disposition of their interests through actions to which they are not parties. The

prosecution of separate actions and individualized litigation would also increase the delay and expense to all parties and the court system. Furthermore, given the relatively small amounts at issue, approximately $11,500 per class member, it is unlikely that any class member (especially a current employee) — acting alone — would have pursued these claims against Defendants. Finally, compared with other methods, such as intervention or the consolidation of individual actions, a class action is fairer and more efficient.

## V. **NOTICE TO CLASS OF FINAL APPROVAL HEARING**

The Court's order preliminarily approving a class settlement must include, *inter alia,* that notice is to be given to all class members who would be bound by the settlement. Fed. R. Civ. P. 23(e)(1). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. A class settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C.*, 361 F.3d at 575 (internal quotations and citations omitted).

### A. **The Proposed Settlement Notice Contains All of the Required Components**

Rule 23 requires that the content of the class notice include, in a manner that is understandable to potential settlement class members: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through an attorney if the member so desires; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

The proposed Settlement Notice is set forth as Exhibit A to the Settlement Agreement (Exh. 1 to Renick Decl.) and provides all of the content requirements set forth in Rule 23, including: (1) the nature of the litigation; (2) a description of the

NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT AGREEMENT; DECLS AND EXHIBITS/ Case No. 2:18-cv-9224 MWF (SSx)

Settlement Class; (3) the class claims; (4) that a class member may enter an appearance in person or through their own attorney; (5) that a class member can request exclusion from the case; (6) the process and time by which a class member must request exclusion; and (7) the scope and binding effect of the judgment and release. In addition, the Notice of Settlement provides the process and timing for Settlement Class members to object to the proposed settlement, identifies Class Counsel, specifies the amount of proposed attorneys' fees and costs that Class Counsel seek, and explains how to obtain additional information regarding the settlement. Finally, as noted above, the Settlement Notice will explain to Settlement Class Members how to file a dispute regarding the estimated settlement payment amount, the number of Qualifying Shifts, or the applicable credits.

### B.  The Method of Notice is Appropriate

The Parties have agreed to use CAC Services Group, LLC, to administer the settlement. CAC will disseminate the proposed Settlement Notice, which contains all of the information required under Rule 23(c)(2)(B). *See* Renick Decl. ¶ 23; Proposed Settlement Notice, Exh. 1(A) to Renick Decl. CAC is an experienced and well-regarded class action settlement administration. CAC's estimated compensation for the settlement administration is $20,000. These costs are reasonable and amount to less than one percent of the settlement. Renick Decl. at ¶ 20.

The Settlement Notice and dispute form will be mailed by First Class Mail, with postage prepaid, to each Settlement Class Member at his or her last-known address maintained in Defendants' employment records. Any Settlement Notice returned as undelivered shall be sent to the forwarding address affixed thereto, if any. If no forwarding address is provided for a Settlement Notice that is returned as undelivered, CAC will use a computer search method to locate a current address. If no current address is located, a notice will be sent via electronic mail if an email address is available for the class member. If no email address is available, the Settlement Notice for that individual will be deemed undeliverable. Any amounts owed to members of the

class who cannot be located will be awarded *cy pres* to the Loyola Law School Workers' Rights Clinic.

The Settlement Agreement provides the following method for Notice to be provided to the Settlement Class Members: Within 10 business days following receipt of the order from this Court granting preliminary approval, Defendant will provide the Claims Administrator, CAC, with information regarding class members. Within 14 calendar days after receiving the above information from Defendants, the Claims Administrator will mail, by first-class U.S. mail, the Notice to all class members. Before the mailing, the Administrator will run the addresses through the U.S. Postal Service's Change of Address Database. All Class Members who do not file a timely Request for Exclusion will participate in the allocation of the Settlement and will be sent a check for their share of the Settlement. Renick Decl. at ¶ 26.

## VI. **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court preliminarily approve the class settlement, conditionally certify the proposed settlement class, and enter the order submitted concurrently herewith.

DATED: March 16, 2020      Respectfully submitted,

HADSELL STORMER RENICK & DAI LLP

*/s/Randy Renick*
Randy Renick
Attorneys for Plaintiffs Michelle Kendig and Jim Kendig

GILBERT & SACKMAN,
A LAW CORPORATION

*/s/Joshua F. Young*
Joshua Young
Attorneys for Plaintiffs Michelle Kendig and Jim Kendig