
JAY SMITH (CA Bar No. 166105)
(Email: js@gslaw.org)
JOSHUA F. YOUNG (CA Bar No. 232995)
(Email: jyoung@gslaw.org)
**GILBERT & SACKMAN**
**A LAW CORPORATION**
3699 Wilshire Boulevard, Suite 1200
Los Angeles, California 90010
Telephone: (323) 938-3000
Fax: (323) 937-9139

RANDY RENICK (CA Bar No. 179652)
(Email: rrr@hadsellstormer.com)
CORNELIA DAI (CA Bar No. 207435)
(Email: cdai@hadsellstormer.com)
**HADSELL STORMER RENICK & DAI LLP**
128 North Fair Oaks Avenue, Suite 204
Pasadena, California 91103-3645
Telephone: (626) 585-9600
Fax: (626) 577-7079

Attorneys for Plaintiffs Michelle Kendig and Jim Kendig

[*Additional Counsel on next page*]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| MICHELLE KENDIG and JIM KENDIG, individually and on behalf of all similarly situated current and former employees,<br><br>Plaintiffs,<br><br>v.<br><br>EXXONMOBIL OIL CORP.; EXXONMOBIL PIPELINE COMPANY; PBF ENERGY LIMITED; TORRANCE REFINING COMPANY, LLC; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 2:18-cv-9224 MWF (SSx)<br><br>Assigned to Hon. Michael W. Fitzgerald<br><br>**DECLARATION OF RANDY RENICK IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT; DECLARATIONS OF COUNSEL; AND EXHIBITS**<br><br>DATE:     April 13, 2020<br>TIME:      10:00 a.m.<br>PLACE:   Courtroom 5A<br><br>Honorable Michael W. Fitzgerald |

# DECLARATION OF RANDY RENICK

I, Randy Renick, hereby declare and say:

1. I am a partner at the law firm of Hadsell Stormer Renick & Dai. I am an attorney licensed to practice law in California, and counsel of record for Plaintiffs in this action.

2. I have reviewed the documents identified herein and am fully familiar with the facts set forth therein. Based on my own personal knowledge and on my familiarity with the documents, pleadings and files in this action, I can state that the following information is true and accurate.

3. On September 18, 2018, Plaintiffs commenced the Action by filing their complaint against Defendants ExxonMobil Oil Corp., ExxonMobil Pipeline Company, PBF Energy Limited, and Torrance Refining Company LLC ("Defendants") in the Superior Court of California, County of Los Angeles, captioned as *Michelle Kendig, et al., v. ExxonMobil Oil Corp. et al.,* Case No. BC722119 ("the Lawsuit"). The Lawsuit alleges the following causes of action on behalf of employees at Defendants' refinery, distribution, and pipeline facilities in or around Torrance, California (the "Torrance Refinery"): (1) Failure to authorize and permit duty free rest periods; (2) failure to furnish accurate wage statements; (3) the California Private Attorneys General Act; and (4) unfair competition. Plaintiffs seek unpaid wages, statutory penalties, restitution, attorneys' fees and costs, interest, and injunctive and declaratory relief for the time period from September 18, 2014 to the present.

4. Plaintiffs alleged that Defendants violated California's wage and hour laws by not providing them with rest breaks, by failing to pay them premium wages for missed rest breaks, and by failing to provide accurate wage statements. Plaintiffs' PAGA and unfair competition claims are based on the same alleged violations.

5. On August 23, 2019, the Parties, including the two Named Plaintiffs, participated in mediation with T. Warren Jackson in San Francisco, California. At the mediation, the Parties reached a partial settlement, which was subsequently finalized

over the next several months. A true and correct copy of the executed Joint Stipulation of Class Action Settlement and Release (the "Agreement") is attached hereto as Exhibit 1.

6. Prior to Settlement, Plaintiffs conducted an extensive investigation of Defendant's wage and hour practices at the Torrance Refinery, particularly in regard to the provision of rest breaks. Plaintiffs interviewed operators at each of the refineries, and reviewed thousands of pages of relevant written materials, including employee handbooks, training materials and emergency protocol materials. In addition, Defendant provided, and Plaintiffs reviewed Defendants' payroll and timecard data containing all of the shifts worked by class members during the class period and the specific pay rate which applied to each of those shifts. Based on this extensive investigation and review of discovered materials, Plaintiffs were able to thoroughly evaluate liability and determine damages. Plaintiffs' due diligence provided a sufficient basis upon which to obtain an outstanding settlement within nine months of the filing of the Complaint. As part of the investigation, we discovered several documents that evidenced a policy requiring employees to work throughout their shifts. The "Torrance Refinery Working Rules" issued in April 2011 identified "[s]leeping, attempting to sleep, or loafing on Company time" as "neglect of duty" and grounds for discharge or other discipline. *See* Exhibit 2. As recently as September 2018, a Head Operator was disciplined for "sleeping on duty" with a two-day suspension without pay when he was attempting to take a rest break. *See* Exhibit 3; *see* also Exhibit 4, PBF Employment Handbook, PBF 1971. The reason given was: "you were observed sleeping by your Supervisor while in your Head Operator Office." Exhibit 3, p. 1.

7. Since September 18, 2014, Defendants have operated an oil refinery in Torrance, California.

8. The refinery operates continuously, 24 hours a day, seven days a week. The oil refining process is a dangerous operation that involves hazardous substances and has the potential for catastrophic consequences.

3
DECLARATION OF RANDY RENICK Case No. 2:18-cv-9224 MWF (SSx)

9. Employees at the refineries who work a "rotating shift schedule," meaning they are paid for all hours worked on their shift, are referred to as "shift workers" or "shift employees." Operators who work 12-hour shifts are "shift employees." There are generally two types of Operators: Console (also known as "Board" or "Inside") Operators and Field (or "Outside") Operators. Console Operators sit at control boards, called "consoles," inside a control facility and monitor and make adjustments to the levels, pressures, temperatures, and other indicators on equipment, products, and processes in their units to ensure that the units are operating properly. Outside Operators work outside in the units and in satellite operating shelters and they are responsible for maintaining, monitoring, inspecting, and making adjustments to equipment at the direction of Console Operators and supervisors.

10. To keep the refineries operating continuously, each unit has four crews of Operators who rotate between day and night shifts. Every crew on every shift must have certain minimum "crew positions" filled by an Operator at all times. Operators on a 12-hour shift remain responsible for their units throughout their shifts. Throughout their shifts, Phillips 66 requires Plaintiffs and the other operators to monitor the refining process, respond to upsets and critical events, and maintain the safe and stable operation of their units. In order to do so, Plaintiffs and the other operators are required to remain attentive, carry radios, and be reachable at all times during their shifts. Plaintiffs are also required to remain in contact with supervisors and other employees working in their unit throughout their shifts. As a result, since September 18, 2014, Plaintiffs and the other operators have worked 12-hour shifts without receiving off-duty rest periods because they are constantly and continuously responsible for their units.

11. Plaintiffs Michelle and Jim Kendig, the two Class Representatives, are both currently employed by Defendant Torrance Refining Company, LLC as operators at the Torrance Refinery. Both have worked for Defendants throughout the class period.

12. **Class Certification** - The settlement class stipulated to by the parties consists of the following: All current and former non-exempt hourly employees holding

an Operator position while employed by ExxonMobil Oil Corporation, ExxonMobil Pipeline Company, PBF Energy Limited, and/or Torrance Refining Company LLC, or any of their affiliates, working at the Torrance refinery, distribution and pipeline facilities in the state of California, County of Los Angeles, at any time during the time period beginning September 18, 2014 and ending on the date of Preliminary Approval. This is the same class proposed in the First Amended Complaint. The Settlement Class includes approximately 275 members.

13. Plaintiffs are proper representatives of the proposed class because they will fairly and adequately represent and protect the interests of all putative class members. Neither the Named Plaintiffs nor their counsel have any apparent conflicts of interest with the absent members of the Settlement Class and the Named Plaintiffs' claims arise out of the same set of facts as those of the Settlement Class. The Named Plaintiffs have been committed to the vigorous prosecution of this case and have reached a resolution they believe is in the best interests of the Settlement Class.

14. My firm Hadsell Stormer Renick & Dai, LLP and Gilbert & Sackman, A Law Corporation, are highly experienced class counsel, having handled dozens of similar wage and hour class actions, as well as other types of class and complex litigation. My firm's qualifications are discussed in detail below and the qualifications of Gilbert & Sackman, A Law Corporation are set forth separately in the Declaration of Joshua Young.

15. **Settlement Terms** – The total settlement amount is Four Million, Three Hundred and Ninety-One Thousand, Five Hundred and Eighty-Five Dollars ($4,391,585). Defendant is also obligated to pay its share of payroll taxes, including FICA and FUDA. The settlement is non-reversionary. Uncashed settlement check(s) will be awarded *cy pres* to Loyola Law School Workers' Rights Clinic. Loyola Law School Workers' Rights Clinic are a proper *cy pres* awardee because the nexus between the Clinic and the California Labor laws at issue in this case is sufficiently direct.

16. **Payments to Class Members** - The primary mechanism for Settlement

involves cash payment to members of the settlement class according to the number of 12-hour shifts worked by each class member during the class period. The net settlement will be fairly distributed amongst the class on a pro rata basis and does not offer preferential treatment to the class representatives or other members of the class. A Credit will be given to each Qualifying Shift (continuous, rotating 12-hour shift) worked by a member of the Settlement Class for the time period of September 18, 2014 to the date of Preliminary Approval, inclusive. Any Settlement Class Member who has no Qualifying Shifts or a partial Qualifying Shift shall be rounded up to receive at least twenty-five (25) Credits. The value of each Credit ("Credit Value") will equal the Net Settlement Proceeds divided by the total number of Credits for all Class Members. Each Settlement Class Member's "Individual Settlement Award" shall equal that individual's total number of Credits multiplied by the Credit Value. All Class Members who do not file a timely Request for Exclusion will participate in the allocation of the Settlement and will be sent a check for their allocation of the Settlement. I estimate the average recovery per class member to be roughly $11,500.

17. **Service Award** - The Settlement Agreement provides for additional compensation in an amount not to exceed $7,500 for each of the three Named Plaintiffs in recognition of the risks and burdens they undertook in the litigation, mediation and settlement of this case. The Service Award is in addition to whatever portion of the settlement proceeds each such individual is otherwise entitled to receive. The enhancements are intended to compensate these individuals fairly in relationship to the rest of the class in light of the additional burdens and risks they have undertaken by assisting in the prosecution of the lawsuit, including their participation in mediation sessions with T. Warren Jackson in San Francisco, and their active assistance with the litigation. The named Plaintiffs have also agreed to a general release of all claims they might have against Defendant.

18. **Payment of PAGA Claims** - $50,000 of the Settlement Fund has been allocated to PAGA penalties with seventy-five percent (75%) of the PAGA penalties

($37,500), being paid to the California Labor and Workforce Development Agency ("LWDA") and twenty-five percent (25%) of the PAGA penalties ($12,500), being paid to Settlement Class Members who do not opt out. Notice of the Settlement Agreement has been provided to the LWDA. The Joint Stipulation of Class Action Settlement and Release was served on the LWDA on March 16, 2020. The Certificate of Service is attached hereto as Exhibit 5.

19. **Attorney's Fees and Costs** - The Settlement Agreement does not include a "fair sailing Provision." Defendants have only agreed not to oppose a Reasonable Attorney's Fee Request. Plaintiffs will seek an award of attorney's fees of 25% of the settlement, $1,097,896. I estimate that the lodestar for Hadsell Stormer & Renick, LLP, and Gilbert & Sackman will be approximately $500,000 at the time of the Motion for Final Approval. I estimate costs to be approximately $30,000. Plaintiff's counsel will provide a full detailing of the time spent on this case in Plaintiff's Motion for an Award of Attorney's Fees and Costs, which will also be posted by the Claims Administrator on its website to allow class members at least 14 days to review the Motion before the deadline in which to opt-out or object to the Settlement.

20. **Administration of Claims** - The parties have agreed to retain CAC, ("CAC" or "Administrator"), of Eden Prairie, Minnesota, to act as the impartial claims administrator. CAC will be retained to calculate each class members share, determine the amount of payroll taxes owed by Defendant, send out notice to the class members, maintain a website containing the key documents in the case, including the settlement agreement, class notice and motion for attorney's fees, to resolve any challenges any party lodges to all or part of a particular claim, and to mail the settlement checks to the authorized claimants. CAC has provided a bid for $19,000. Given my experience that tasks which are not contemplated at the time of preliminary approval are often asked of the administrator thereby increasing the actual amount to be paid to the Administrator, the Class Notice states that the Costs of Administration will be less than $30,000. These costs are to be paid out of the settlement fund, are reasonable and amount to less than

one percent of the settlement.

21. **<u>Notice to the Class</u>** - The Settlement Agreement contemplates, among other things, that this Court will certify a settlement class and grant preliminary approval of the settlement. After preliminary approval and class certification, the Settlement Agreement requires that the Notice Packet will be sent via first class mail to class members within 35 business days of preliminary approval. The Notice will inform potential class members of the terms of the Settlement Agreement, their right to dispute the estimated settlement payment amount, their right to opt out of the class, their right to object to the settlement, and their right to be heard at the final hearing on the fairness of the settlement. A true and correct copy of the Notice of Class Action Settlement is attached hereto as Exhibit A to the executed Agreement, Exhibit 1.

22. For each member of the Class, they will be provided an individualized Notice form that will include the number of shifts worked during the class period and the number of credits which form the basis for determining each individual claimant's share of the settlement proceeds. In addition, each Notice will also include each class member's expected share of the settlement.

23. The Notice advises each class member that they have three (3) options. Those options are: (1) do nothing and receive payment; (2) request exclusion in order to be excluded from the settlement; or (3) object to the proposed settlement by filing a written objection and appearing at the Motion for Final Approval hearing. The Notice also explains how to file a dispute regarding the estimated settlement payment amount, the number of Qualifying Shifts, or the applicable credits.

24. The parties are confident that this notice by mailing to the last known address and to more recent addresses obtained through reasonable investigation is the best means available to reach class members.

25. The Settlement Notice and dispute form will be mailed by First Class Mail, with postage prepaid, to each Settlement Class Member at his or her last-known address maintained in Defendants' employment records. Any Settlement Notice returned as

undelivered shall be sent to the forwarding address affixed thereto, if any.  If no forwarding address is provided for a Settlement Notice that is returned as undelivered, CAC will use a computer search method to locate a current address. If no current address is located, a notice will be sent via electronic mail if an email address is available for the class member.  If no email address is available, the Settlement Notice for that individual will be deemed undeliverable.  Any amounts owed to members of the class who cannot be located will be awarded *cy pres* to Loyola Law School's Workers' Rights Clinic.

26. The Settlement Agreement provides the following method for Notice to be provided to the Settlement Class Members: Within 10 business days following receipt of the order from this Court granting preliminary approval, Defendants will provide the Claims Administrator, CAC, with information regarding class members.  Within 14 calendar days after receiving the above information from Defendants, the Claims Administrator will mail, by first-class U.S. mail, the Notice to all class members.  Before the mailing, the Administrator will run the addresses through the U.S. Postal Service's Change of Address Database.  All Class Members who do not file a timely Request for Exclusion will participate in the allocation of the Settlement and will be sent a check for their allocation of the Settlement.

27. **The Agreement Was Reached After Extensive Arms-Length Negotiations** –Settlement negotiations in this case were conducted over several months and, at all times, were adversarial, non-collusive, in good faith, and at arms' length.  Both during and after the mediations, the Parties continued to exchange written proposals and discuss settlement terms through their counsel. Class Counsel sought and obtained input from the Named Plaintiffs in this case regarding the terms of a proposed settlement

28. The settlement provides for the payment of $4,391,585.  Based on my assessment of damages, including review of timecard and payroll data encompassing all shifts during the class period, the settlement represents 56% of the damages incurred

during the class period. This settlement falls within the range of reasonable approval.

29. **Experience of Counsel** - Class Counsel, who have many years of experience in class action and wage and hour law, recommend the proposed settlement and believe that it is in the best interests of the Settlement Class. The qualifications of Gilbert & Sackman, A Law Corporation are set forth separately in the Declaration of Joshua Young.

30. My firm, Hadsell Stormer Renick & Dai, LLP has substantial litigation experience in wage and hour class actions, and are fully familiar with the legal and factual issues in this case, having handled dozens of wage and hour class actions as well as other types of class action and complex litigation. I specialize in complex cases and class action litigation, including wage and hour, antitrust, employment, civil rights and public interest litigation. I am a graduate of Southwestern School of Law and have been specializing in complex litigation since 1995, first with Hadsell & Stormer, Inc., and from January 1, 2000 until December 31, 2007 with the Law Offices of Randy Renick. Since January 1, 2008, I have been a partner with Hadsell Stormer Keeny Richardson & Renick, LLP, and its successors Hadsell Stormer Richardson & Renick, LLP and Hadsell Stormer & Renick, LLP. I was selected as a "Rising Star" by the Los Angeles Magazine and Law & Politics Magazine for 2004 and have also been selected as a "Super Lawyer" by Los Angeles Magazine and Law & Politics Magazine for the last eight years. I have been one of only a few plaintiff-side employment lawyers selected for inclusion on the "Best Lawyers in America" list each year since 2007. My C.V. is attached hereto as Exhibit 6.

31. I am regularly asked to give lectures regarding public interest and class action litigation to lawyers, law students and public interest organizations, including by the following organizations: The University of California at Los Angeles School of Law; the State Bar of California Labor and Employment Section; the Los Angeles County Bar Labor and Employment Section; The Coalition Against Slavery and Trafficking; and the Western Trial Lawyers Association.

32. Cornelia Dai is a partner with Hadsell Stormer & Renick, LLP, and was formerly an associate with Hadsell & Stormer, Inc. Ms. Dai's practice specializes in wage and hour class actions, individual employment cases, and other civil rights and international human rights cases. In 2008, she and her co-counsel obtained a judgment of more than $5.1 million in a class action involving violations of overtime and meal and rest break laws in Wang v. Chinese Daily News. Ms. Dai was also one of the plaintiffs' counsel in South Central Farmers Feeding Families v. City of Los Angeles, a case brought on behalf of over 300 low-income families in a struggle to preserve land for a much-needed urban community garden in South Los Angeles. In addition, she was one of the Doe plaintiffs' counsel in the state litigation of the international human rights case Doe v. Unocal, which involved human rights abuses by a large oil company against Burmese villagers.

33. Ms. Dai has been listed in Southern California Super Lawyers® – Rising Stars edition, published by Los Angeles Magazine and Law & Politics Magazine, each year since 2005. She was featured in the July 2007 issue of Southern California Super Lawyers® - Rising Stars edition, in an article entitled "For Abusive Employers, The Dai Has Been Cast." Ms. Dai was selected for inclusion in the Los Angeles Daily Journal's Top Labor & Employment Lawyers list in 2011. She was also selected for inclusion in the 2012, 2013 and 2014 editions of The Best Lawyers in America for the practice area of Employment Law. Ms. Dai currently sits on the Executive Committee of the Labor and Employment Law section of the Los Angeles County Bar Association and the Executive Advisory Council of Asian Americans Advancing Justice, Los Angeles (formerly APALC). She is a 1995 graduate of U.C. Berkeley, with a Bachelor of Arts degree in Sociology. She earned her Juris Doctorate at U.S.C. Law School in 1999.

34. Elizabeth Song is an associate with Hadsell Stormer Renick & Dai LLP. Previously, Ms. Song served as a public interest fellow at Public Counsel's Opportunity Under Law project. Ms. Song is a 2014 graduate of the Yale Law School, and a former law clerk to the Honorable Dean D. Pregerson of the U.S. District Court for the Central

District of California and the Honorable Milan D. Smith of the U.S. Court of Appeals for the Ninth Circuit.

I declare under penalty of perjury pursuant to the laws of the United States and the State of California that the foregoing is true and correct and that this declaration was executed on March 16, 2020, at Los Angeles, California.

Randy Renick