JAY SMITH (CA Bar No. 166105)
(Email: js@gslaw.org)
JOSHUA F. YOUNG (CA Bar No. 232995)
(Email: jyoung@gslaw.org)
**GILBERT & SACKMAN**
**A LAW CORPORATION**
3699 Wilshire Boulevard, Suite 1200
Los Angeles, California 90010
Telephone: (323) 938-3000
Fax: (323) 937-9139

RANDY RENICK (CA Bar No. 179652)
(Email: rrr@hadsellstormer.com)
CORNELIA DAI (CA Bar No. 207435)
(Email: cdai@hadsellstormer.com)
**HADSELL STORMER RENICK & DAI LLP**
128 North Fair Oaks Avenue, Suite 204
Pasadena, California 91103-3645
Telephone: (626) 585-9600
Fax: (626) 577-7079

Attorneys for Plaintiffs Michelle Kendig and Jim Kendig

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| MICHELLE KENDIG and JIM KENDIG, individually and on behalf of all similarly situated current and former employees, | Case No.: 2:18-cv-9224 MWF (SSx) |
| | Assigned to Hon. Michael W. Fitzgerald |
| Plaintiffs, | **NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT; DECLARATIONS AND EXHIBITS** |
| v. | |
| EXXONMOBIL OIL CORP.; EXXONMOBIL PIPELINE COMPANY; PBF ENERGY LIMITED; TORRANCE REFINING COMPANY, LLC; and DOES 1 through 10, inclusive, | DATE:     August 17, 2020 TIME:      10:00 a.m. PLACE:    Courtroom 5A |
| Defendants. | [*Concurrently filed herewith: Declarations and Exhibits; [Proposed] Order; and [Proposed] Judgment and Dismissal*] |

# TABLE OF CONTENTS

**PAGE(S)**

TABLE OF AUTHORITIES ..................................................................... iii

I.     INTRODUCTION ......................................................................1

II.    STATEMENT OF FACTS ...........................................................3

    A.     Procedural Background ....................................................3

    B.     Pertinent Factual Background ...........................................5

        1.     Operators Work on a Rotating Shift Schedule
            and Remain in Constant Communication to Keep the Refineries
            Working Continuously ...............................................5

        2.     Exxon's Policies Require Operators to Be On Duty
            Throughout Their Shifts and Do Not Provide Them
            with 10-Minute, Off-Duty Rest Breaks. ...................................6

    C.     Discovery and Investigation Conducted by Plaintiffs...........................7

III.   ARGUMENT..............................................................................7

    A.     The Court-Approved Notice Plan Was Fully Implemented
        and Satisfies Rule 23 Requirements......................................7

    B.     The Settlement is Fair, Adequate, and Reasonable
        and Should be Granted Final Approval...............................10

        1.     The Strength of Plaintiffs' Case and the Risk, Expense,
            Complexity, and Likely Duration of Further Litigation ..........11

        2.     The Amount Offered in Settlement .........................................13

        3.     The Extent of Discovery and Stage of the Proceedings ..........14

        4.     Experience and Views of Counsel ...........................................14

        5.     The Presence of Governmental Entities....................................15

i

# TABLE OF CONTENTS
## (Continued)

PAGE(S)

6.      The Reaction of the Class Members .........................................15

C.      The Plan of Allocation Is Fair, Adequate, and
        Reasonable and Should be Approved ...................................16

D.      The Court Should Grant Plaintiffs' Request for Incentive Awards
        for the Six Named Plaintiffs..................................................19

E.      Final Certification of the Class for Settlement Purposes Is Proper. ...22

        1.      The Settlement Class Satisfies the Rule 23(a) Requirements...22

        2.      The Settlement Class Meets the Requirements of Rule 23(b)..24

IV.   CONCLUSION.................................................................................25

ii

NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT AGREEMENT; DECLS AND EXHIBITS/ Case No. 2:18-cv-9224 MWF (SSx)

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Augustus v. ABM Security Services, Inc.*,
  2 Cal. 5th 257 (2016) ...................................................................4, 12, 24

*Bell v. Home Depot U.S.A., Inc.*,
  No. 2:12-cv-02499 ...................................................................12

*Bellinghausen v. Tractor Supply Co.*,
  306 F.R.D. 245 (N.D. Cal. 2015)...................................................17, 20, 21

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ...........................................................16, 17

*Bradley v. Networkers Int'l, LLC*,
  211 Cal. App. 4th 1129 (2012) ...........................................................24

*Brinker Restaurant Corp. v. Superior Court*,
  53 Cal.4th 1004 (2012) ...................................................................24

*Browne v. Am. Honda Motor Co.*,
  2010 U.S. Dist. LEXIS 145475 (C.D. Cal. July 29, 2010)........................................11

*Buzas et al. v. Phillips 66*,
  Case No. 4:17:cv-00163-YGR (N.D. Cal.) .....................................................3

*Buzas v. Phillips 66 Company*,
  No. 4:17-cv-00163-YGR (N.D. Cal.) ...........................................................21

*In re Capital One Tel. Consumer Prot. Act Litig.*,
  2015 U.S. Dist. LEXIS 17120 (N.D. Ill. Feb. 12, 2015) .........................................22

*Chu v. Wells Fargo Invs.*, LLC
  2011 U.S. Dist. LEXIS 15821 (N.D. Cal. Feb. 15, 2011) .................................20, 21

*In re Citric Acid Antitrust Litig.*,
  145 F. Supp. 2d 1152 (N.D. Cal. 2001) .....................................................16

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ...............................................................12

iii

NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT AGREEMENT; DECLS AND EXHIBITS/ Case No. 2:18-cv-9224 MWF (SSx)

# TABLE OF AUTHORITIES
## (Continued)

**PAGE(S)**

**Cases**

*Clack v. Chevron Corporation*,
  Case No. BC649514 (Los Angeles Superior Court, Judge Amy D.
  Hogue)..............................................................................................................3

*In re Continental Illinois Securities Litig.*,
  962 F.2d 566 (7th Cir. 1992) ..........................................................................20

*Covillo v. Specialty's Café*,
  2014 U.S. Dist. LEXIS 29837 (N.D. Cal. Mar. 6, 2014) ...........................21

*Cullen v. Whitman Med. Corp.*,
  197 F.R.D. 136 (E.D. Pa. 2000).....................................................................20

*Dennis v. Kellogg Co.*,
  697 F.3d 858 (9th Cir. 2012) ..........................................................................19

*Edwards v. The First Am. Corp.*,
  798 F.3d 1172 (9th Cir. 2015) ........................................................................24

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ..........................................................................23

*Ellis v. Naval Air Rework Facility*,
  87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981).........11

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ........................................................................25

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ..........................................................................23

*Harris v. Vector Mktg. Corp.*,
  2011 U.S. Dist. LEXIS 48878 (N.D. Cal. Apr. 29, 2011).........................17

*In re High-Tech Emple. Antitrust Litig.*,
  2015 U.S. Dist. LEXIS 118051 (N.D. Cal. Sep. 2, 2015) ..............10, 11, 19

iv

NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT AGREEMENT; DECLS AND EXHIBITS/ Case No. 2:18-cv-9224 MWF (SSx)

**TABLE OF AUTHORITIES**
(Continued)

**PAGE(S)**

**Cases**

*In re Hyundai & Kia Fuel Econ. Litig.*,
   Nos. 15-56014, 15-56025, 15-56059, 15-56061, 15-56064, 15-56067,
   2018 U.S. App. LEXIS 1626 (9th Cir. Jan. 23, 2018)................................22

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ......................................................................8

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) .....................................................11, 13, 14

*Marshall v. Holiday Magic, Inc.*,
   550 F.2d 1173 (9th Cir. 1977) ..............................................................8, 10

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) .........................................11, 12, 22, 23

*Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*,
   618 F.3d 988 (9th Cir. 2010) ....................................................................10

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004).........................................................13, 14

*Officers for Justice v. Civil Svc. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ....................................................................10

*In re Oracle Sec. Litig.*,
   1994 U.S. Dist. LEXIS 21593 (N.D. Cal. June 18, 1994).........................18

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ......................................................................8

*Sandoval v. Roadlink United States Pac., Inc.*,
   No. EDCV 10-00973 ................................................................................24

*Sandoval v. Tharaldson Employee Mgmt., Inc.*,
   2010 U.S. Dist. LEXIS 69799 ..................................................................22

v

# TABLE OF AUTHORITIES
## (Continued)

**PAGE(S)**

**Cases**

*Satchell v. Fed. Express Corp.*,
  No. 03-cv-2878-SI, WL 1114010 (N.D. Cal. Apr. 13, 2007) ....................................11

*Slaven v. BP America, Inc.*,
  190 F.R.D. 649 (C.D. Cal. 2000)......................................................................22

*Spalding v. City of Oakland*,
  No. 11-cv-02867 TEH (N.D. Cal. Sept. 9, 2013) ......................................21

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ............................................................20, 21

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) .......................................................9, 10, 11

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) .........................................................10

*Viceral v. Mistras Group, Inc.*
  2017 WL 661352 (N.D. Cal. Feb. 17, 2017) ..............................18

*In re Visa Check/Mastermoney Antitrust Litig.*,
  297 F. Supp. 2d 503 (E.D.N.Y. 2003), aff'd 396 F.3d 96 (2d Cir. 2005) .................13

*Wren v. RGIS Inventory Specialists*,
  2011 U.S. Dist. LEXIS 38667 (N.D. Cal. Apr. 1, 2011)...........................20

**Statutes**

CAFA ..............................................................................................15

Cal. Lab. Code § 226.75 ......................................................................4

Cal. Lab. Code § 226.75(a) ...............................................................12

Cal. Lab. Code § 226.75(g) ...............................................................13

NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT AGREEMENT; DECLS AND EXHIBITS/ Case No. 2:18-cv-9224 MWF (SSx)

**TABLE OF AUTHORITIES**
(Continued)

**PAGE(S)**

**Statutes**

Cal. Lab. Code § 2699(l)(2) ............................................................................... 15

28 U.S.C. § 1715 .............................................................................................. 15

Private Attorneys General Act ...................................................................*passim*

**Rule**

Fed R. Civ. P. 23 .........................................................................................*passim*

**IWC Wage Order**

Wage Order 4-2001............................................................................................ 24

**Other Authorities**

Assembly Bill No. 2605...................................................................................... 12

NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT AGREEMENT; DECLS AND EXHIBITS/ Case No. 2:18-cv-9224 MWF (SSx)

PLEASE TAKE NOTICE that on August 17, 2020, at 10:00 a.m., in Courtroom 5A of the above-entitled court, Plaintiffs Michelle Kendig and Jim Kendig, individually and on behalf of themselves and all members of the conditionally certified class, will move and hereby do move, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for entry of the order concurrently filed herewith granting final approval of the class action settlement and the plan of allocation and entry of judgment.

The motion will be based on the Federal Rules of Civil Procedure, the foregoing notice, memorandum of points and authorities, and declarations and exhibits filed concurrently herewith, and the pleadings, records, and files in this action.

DATED:  August 3, 2020          Respectfully submitted,

HADSELL STORMER RENICK & DAI LLP

*/s/Randy Renick*
Randy Renick
Attorneys for Plaintiffs Michelle Kendig and Jim Kendig

## I.   **INTRODUCTION**

Plaintiffs Michelle Kendig and Jim Kendig (collectively, "Plaintiffs") seek final approval of the proposed class action settlement ("Settlement") with Defendants ExxonMobil Oil Corp. and ExxonMobil Pipeline Company (collectively, the "Exxon Defendants") and Defendants PBF Energy Limited and Torrance Refining Company LLC (collectively, the "TORC Defendants") of wage and hour claims brought on behalf of refinery operators employed by Defendants.  Attached as Exhibit 1 to the Declaration of Randy Renick filed concurrently herewith is a true and correct copy of the Joint Stipulation of Class Action Settlement and Release ("Settlement Agreement").

On May 11, 2020, The Court granted Plaintiffs' Motion for Preliminary Approval of Settlement Agreement.  *See* Order, Dkt. 43. The Settlement provides that Defendants will pay $4,391,585 for the benefit of the Class, which is defined as:

> [a]ll current and former non-exempt hourly employees holding an Operator position while employed by ExxonMobil Oil Corporation, ExxonMobil Pipeline Company, PBF Energy Limited, and/or Torrance Refining Company LLC, or any of their affiliates, working at the Torrance refinery, distribution and pipeline facilities in the state of California, County of Los Angeles, at any time during the time period beginning September 18, 2014 and ending on May 11, 2020.

*Id.* at 4. Specifically, the Exxon Defendants agreed to pay $1,491,372 and the TORC Defendants agreed to pay $2,900,213, for a total of $4,391,585 ("Settlement Fund"). Renick Decl. ¶ 17, and Ex. 1, ¶ 33, thereto.  Furthermore, in addition to their proportionate share of the Settlement Fund, each Defendant will pay the employer's share of any payroll taxes, including FICA and FUDA. *Id.*

The Settlement provides for cash payment to Class Members according to the number of "Qualifying Shifts" worked by each class member during the class period;[1] additional service awards not to exceed $7,500 for each of the two named Plaintiffs;

---

[1] "Qualifying Shift" is defined as: "(i) a shift of at least twelve (12) continuous hours worked as an Operator by a Class Member; or (ii) a shift scheduled for at least twelve (12) continuous hours, worked as an Operator by a Class Member for a period of at least three and one-half (3½) hours, and for which the employee has not previously been paid an hour of premium pay for a missed or interrupted rest period for the subject workday." Renick Decl., Ex. 1, ¶ 8.

$50,000 to penalties under the Private Attorneys General Act ("PAGA"), with 75% of the PAGA penalties ($37,500) being paid to the California Labor and Workforce Development Agency ("LWDA") and 25% of the PAGA penalties ($12,500) being paid to Settlement Class Members who do not opt out; an estimated $30,000[2] to CAC Services for claims administration; and reasonable attorneys' fees and costs. Renick Decl. ¶ 17.

The Court should grant final approval of the Settlement as it is fair, reasonable, and adequate. The Settlement provides for payment of $4,391,585 on an all-cash, non-reversionary basis, and is the result of arms-length negotiations following an extensive investigation of liability and damages conducted by Plaintiffs. The net settlement to be distributed to the Class after the reduction of the LWDA payment for PAGA penalties, attorneys' fees, costs, incentive awards, and administration costs is $3,215,745.13. Johnson Decl. ¶ 16, and Ex. 2 thereto. The average payment to each of the 338 Class Members who worked Qualifying Shifts is $9,514.04. *Id.* Thus, the financial benefit conferred upon the class is significant, and the recovery here is fair, reasonable, and adequate in light of the substantial benefit conferred on the class members and the risk, expenses, and uncertainty of continued litigation.

In addition, the reaction of the Class Members has been very positive and favors approval of the Settlement.  None of the 338 Class Members have objected, and none have opted out. Johnson Decl. ¶¶ 12-13. The Claims Administrator properly implemented the Notice Plan, and only five (5) remain undeliverable. *Id.* at ¶ 9. Efforts to locate those five will continue for at least another 180 days. Renick Decl., Ex. 1, at ¶ 93. There were two timely disputes, which have been resolved based on data provided to the Claims Administrator by Defendants. Renick Decl. ¶ 27; Johnson Decl. ¶ 15.

The Court should also approve the plan of allocation, whereby the court-approved attorneys' fees and costs, court-approved service awards, administrative costs, and

---

[2] CAC Services' invoice of administration costs came in under budget at $17,836.10. Declaration of Nancy Johnson ("Johnson Decl."), ¶ 17, and Ex. 3 thereto.

payment to the LWDA under PAGA are deducted from the Settlement, and a formula based on Qualifying Shifts is used for distribution to the Class Members of the resulting Net Settlement Proceeds.

In addition, the requested incentive awards in the amount of $7,500 for each of the two Named Plaintiffs is consistent with a fair, just, and adequate settlement.

Final approval of certification for purposes of settlement under Fed. R. Civ. P. 23 is also proper.

## II.   STATEMENT OF FACTS

### A.   Procedural Background

On September 18, 2018, Plaintiffs filed their complaint against Defendants in *Michelle Kendig et al., v. ExxonMobil Oil Corp.; ExxonMobil Pipeline Company; PBF Energy Limited; Torrance Refining Company, LLC* in the Los Angeles Superior Court (the "Complaint" in the "Class Action").[3]  The Complaint alleged the following causes of action: (1) Failure to authorize and permit duty free rest periods; (2) failure to furnish accurate wage statements; (3) the California Private Attorneys General Act; and (4) unfair competition.  Plaintiffs sought unpaid wages, statutory penalties, restitution, attorneys' fees and costs, interest, and injunctive and declaratory relief for the time period from September 18, 2014 to the present.  Declaration of Randy Renick ("Renick Decl."), ¶¶ 3-4.

On October 26, 2018, TORC Defendants removed the matter to the United States

---

[3] Gilbert & Sackman and Hadsell Stormer Renick & Dai have filed similar lawsuits against: Chevron, *Clack v. Chevron Corporation*, Case No. BC649514, (Los Angeles Superior Court, Judge Amy D. Hogue); Tesoro, *Valliere v. Tesoro Refining and Marketing Co.*, 3:17-cv-00123 (Northern District of California, Judge Jon S. Tigar); Phillips 66, *Buzas et al. v. Phillips 66*, Case No. 4:17:cv-00163 (Northern District of California, Judge Yvonne Gonzalez Rogers); and Shell, *Berlanga v. Equilon Enterprises LLC dba Shell Oil Products US, et al.*, Case No. 4:17-cv-00282-MMC (Northern District of California, Judge Maxine Chesney).  Final Approval of the $5,500,000 *Phillips 66* settlement was granted on March 8, 2018.  Final approval of the $7,750,000 *Shell* settlement was granted on January 22, 2019. Final approval in the *Chevron* matter is pending. Preliminary approval in the *Tesoro* matter was granted on June 26, 2020. Declaration of Joshua F. Young ¶¶ 5.a.-5.d; Renick Decl. ¶ 38.

District Court for the Central District of California, Case No. 2:18-cv-9224 MWF.  On February 1, 2019, Defendants answered the Complaint, denying each and all of the claims alleged by Plaintiffs in the Class Action.  Specifically, Defendants ExxonMobil Pipeline Company and PBF Energy Limited deny that they, or either of them, have ever employed operators at the Torrance Refinery.  Renick Decl. ¶ 5.

All Defendants deny that Operators at the Torrance Refinery were or are required to carry radios or other communication devices during their rest breaks.  In addition, all Defendants deny that Plaintiffs, or any of them, are entitled to interest on allegedly unpaid premium pay.  Moreover, TORC Defendants take the position that even if they, or either of them, were potentially liable on any claim Plaintiffs have asserted, the Class Period ended September 20, 2018, when the California State Legislature enacted Labor Code section 226.75 in response to *Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257 (2016), and supplied a limited exemption to the "relieved of all duty" rest break mandate insofar as a refinery employer requires an employee in a safety-sensitive position to carry an emergency communication device, to remain on employer premises, to monitor communications, and/or to be available to respond to emergencies.  Furthermore, the TORC Defendants take the position that notwithstanding the current conflict among California appellate courts, missed rest periods and alleged failure to pay premium wages do not give rise to *penalty* claims. Renick Decl. ¶ 6.

On August 23, 2019, the Parties participated in mediation with T. Warren Jackson in Los Angeles, California, and were able to reach a settlement of all claims.  The Settlement was ultimately reduced to a written settlement agreement and executed by all parties. Renick Decl. ¶ 7, and Settlement Agreement, Exhibit 1, thereto.

Prior to Settlement, Plaintiffs conducted a complete investigation of Defendant's wage and hour practices with regard to rest breaks so as to evaluate liability and damages.  Plaintiffs reviewed extensive payroll and timecard data which allowed Plaintiffs to accurately determine the total amount of damages for which Defendants would be liable were Plaintiffs successful in their efforts to certify the class and prevail

1   at trial.  Renick Decl. ¶ 8.

2       **B.**    **Pertinent Factual Background**

3       **1.**    **Operators Work on a Rotating Shift Schedule and Remain in Constant Communication to Keep the Refineries Working**
4       **Continuously**

5       The Torrance Refinery operates continuously, 24 hours a day, seven days a week.

6   The oil refining process is a dangerous operation that involves hazardous substances and

7   has the potential for catastrophic consequences if something goes wrong.  Because the

8   refining of crude oil is a continuous production process, Defendants need employees to

9   operate and/or monitor the process at all times; thus, Operators at the Torrance Refinery

10   work 12-hour rotating "continuous" shifts on four schedules. Renick Decl. ¶¶ 9-10.

11       There are 10 processing units at the Torrance Refinery, including the Tank Farm,

12   Oil Movements, Sulfur Recovery (SRU), Hydrotreater (HDT), Hydroprocessing

13   (HDC/PTR), Alkylation (ALKY), Utilities (UTL), Coker, Crude and Fluid Catalytic

14   Converter (FCC).  Each unit has one Console Operator and one Head Operator except

15   for the Coker unit, which has two Head Operators.[4]  Console Operators work together in

16   one room, a location separate from their units.  They are responsible for monitoring

17   tank, tower, and oil levels, temperatures for equipment and refining processes, flow

18   levels, lubrication, and pressure readings for different processes and equipment, and

19   making adjustments to processes and equipment, as needed, from computer board

20   terminals.  *Id.* at ¶ 11.

21       Field Operators generally take direction from Console Operators and make

22   adjustments to the production process from the field.  Thus, Console Operators and

23   Field Operators must coordinate their activities to ensure that the refining process

24   operates safely and efficiently.  Field Operators are also responsible for monitoring

25

26       ―――――――――

27   [4] In addition to the basic responsibilities of an Operator, a Head Operator has additional operational and administrative duties, including maintenance backlog, monitoring reliability, conducting regular safety meetings, conducting emergency drills,
28   and monitoring training of individual Operators in his or her unit. Renick Decl. ¶ 11.

equipment with readings that do not have a signal to the console.  In addition, they must be available to contractors working in their units and provide them with work direction as well as other assistance. *Id.* at ¶ 12.

In order to constantly monitor the refining process, make adjustments to equipment, respond to alarms, be ready to respond immediately in the event of fire, medical emergency, environmental contamination, and unit upset, and generally maintain the safe and stable operation of their units, Plaintiffs and the other Operators were required to remain attentive, carry radios, and be reachable at all times during their shifts.  Indeed, signs are posted in the processing areas stating: "refinery radios required."  "Unit radios" are also specifically identified as necessary equipment in the guidelines for operating procedures in the different units. *Id.* at ¶ 13.

Plaintiffs and the other Operators were also required to remain in communication with supervisors and other employees working in their units throughout their shifts. This responsibility was of such importance to the role of Operator that it is specifically identified in materials for operator trainees as one of 10 basic responsibilities of an Operator. *Id.* at ¶ 14.

Thus, Plaintiffs and the other Operators never received off-duty rest breaks because they were constantly and continuously responsible for their units.

### 2.   Exxon's Policies Require Operators to Be On Duty Throughout Their Shifts and Do Not Provide Them with 10-Minute, Off-Duty Rest Breaks.

Defendants require Operators to remain on the refinery premises and in or near their work areas throughout their shifts.  Operators who leave their area or unit while still on their shift must carry their radios, and they are not provided with any relief that would allow them to take uninterrupted, off-duty rest breaks.  They are not permitted to do anything during their shifts that would interfere with their ability to monitor their units, respond to radio calls, alarms, or unit upsets, and perform other work duties. *Id.* at ¶¶ 8, 13-14. Defendants maintained refinery-wide policies that require that Operators remain in radio communication at all times, remain on the refinery premises, and refrain

from sleeping, reading non-work-related materials, using headphones, watching movies, and sleeping. *Id.*

As Defendants have no policies or practices which provide relief to Operators of all their duties, Operators remain on duty throughout their shifts and do not receive compliant rest breaks.

### C.    Discovery and Investigation Conducted by Plaintiffs

Plaintiffs conducted extensive investigation of Defendant's wage and hour practices at the Torrance Refinery, particularly in regard to the provision of rest breaks. Plaintiffs interviewed operators at the Torrance refinery and reviewed thousands of pages of relevant written materials, including employee handbooks, training materials and emergency protocol materials.  In addition, Defendants provided, and Plaintiffs reviewed, Defendants' payroll and timecard data containing all of the shifts worked by each class members during the class period and the specific pay rate that applied to each of those shifts.  Based on this extensive investigation and review of discovered materials, Plaintiffs were able to thoroughly evaluate liability and determine damages. Plaintiffs' due diligence provided a sufficient basis upon which to obtain an outstanding settlement on behalf of the class.  Renick Decl. ¶ 8.

### III.   <u>ARGUMENT</u>

### A.    The Court-Approved Notice Plan Was Fully Implemented and Satisfies Rule 23 Requirements.

Rule 23 requires for class action settlements that a court direct notice in a "reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(2).  Rule 23 further requires that the notice be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," and that the notice state the nature of the action, the class definition, the class claims, issues, or defenses, the right to individual legal representation, the right to request exclusion, and the binding effect of a judgment under Rule 23(c)(3). Fed R. Civ. P. 23(c)(2).  The notice "must present a fair recital of the

subject matter and proposed terms and give[] an opportunity to be heard to all class members." *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1177 (9th Cir. 1977).

On May 11, 2020, the Court entered an order preliminarily approving, *inter alia*, the proposed notice and plan of dissemination. Order, Dkt. 43; *see* Notice, Dkt. 32-2, Ex. A to Ex. 1. After "review[ing] the contemplated notice regime and the form and substance of the proposed notice, the Court conclude[ed] that the proposed class notice satisfies the requirements set forth in Rule 23(c)(2)(B)." Dkt. 43 at 20.

Pursuant to and in compliance with the Preliminary Approval Order, court-appointed Claims Administrator CAC Services mailed the Notice to the Settlement Class Members. Johnson Decl. ¶¶ 6.a.-6.h. The Notice provided to the class included detailed information regarding the following: the nature of the case; the definition of the class; the terms of the Settlement; a class member's rights with respect to participation in the Settlement and the consequences of exercising those rights; the total settlement amount, including the portions of the total settlement amount allocated to PAGA penalties and for payment of service awards, attorneys' fees and costs, and administrative costs; and the specific formula for calculating each member's claim. Ex. 1 to Johnson Decl. The Notice sent to each class member was also customized to include the estimated amount each Class Member should expect to receive and the total number of Qualifying Shifts worked by that Class Member during the class period. Johnson Decl. ¶ 6.c., and Ex. 1 thereto. Thus, the information provided in the Notice exceeds that which is required. *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (proper notice "does not require an estimate of the potential value of [the] claims"); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) (The notice is sufficient if it "describes the aggregate amount of the settlement fund and the plan for allocation."). Indeed, a class notice need only "generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Lane*, 696 F.3d at 826 (citation omitted).

The Claims Administrator carried out and fully complied with the plan of

dissemination approved by the Court, *see* Dkt. 43 at 19-20.  The Claims Administrator determined from the data provided by Defendants on May 26, 2020, that there were 335 Settlement Class Members, and sent the Notice to those Class Members on June 9, 2020. Johnson Decl. ¶¶ 6.a.-6.d.  That same day, the Claims Administrator created a case website, www.exxoncaliforniarefineryrestbreaksettlement.com, and posted the notice of settlement and other relevant court documents. *Id.* at ¶¶ 6.e.  Plaintiffs' Motion for Attorneys' Fees and Reimbursement of Costs and supporting documents were then posted on the case website on June 25, 2020. *Id.* at ¶ 6.f.  On July 9, 2020, Defendants provided the Claims Administrator information for three additional Settlement Class Members, and the Claims Administrator promptly sent out the Notice to the three that same day. *Id.* at ¶¶ 6.g.-6.h.

Of the total 338 Notices mailed (i.e., 335 Notices mailed on May 26, 2020, and additional three mailed on July 9, 2020), two were returned by the United States Post Office with a forwarding address and two new addresses were provided by Class Members. The Claims Administrator updated its class members list with the updated information, and these notices were re-mailed to the new addresses. Johnson Decl. ¶¶ 8-9.  Nine Notices were returned without updated addresses. The Claims Administrator was able to locate new addresses for four and re-deliver those Notices. *Id.* at ¶ 10. Despite a good faith effort, five Notices remain classified as undeliverable. Johnson Decl. ¶ 10. The Claims Administrator and Class Counsel will continue their efforts to locate the three for at least 180 days. Renick Decl., Ex. 1, at ¶ 93.  Thus, the Notice Plan provided the "best notice that is practicable under the circumstances" as notice was provided to each Class Member who could be identified based on Defendants' records, and only seven required re-mailing.

Further, the 45-day deadline to object or opt out approved by the Court satisfies the notice requirements of Rule 23 and does not infringe on due process rights. Indeed, the Ninth Circuit has held that mailing the notice 31 days before the deadline for objections is adequate.  *Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1375 (9th Cir.

1993); *see also Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977) (26 days to opt out after mailing of notice adequate where class members were informed participants).

On June 25, 2020, the Claims Administrator posted to the case website Plaintiffs' Notice and Motion for Attorneys' Fees and Reimbursement of Costs and supporting papers. Johnson Decl. ¶ 6.f.  This posting, 29 days prior to the objection/opt-out deadline of July 24, 2020, *see* Order, Dkt. 43 at 29, was consistent with the Court's order and satisfies the standard for notice set by the Ninth Circuit in *Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*, 618 F.3d 988 (9th Cir. 2010), which requires that a motion for attorneys' fees be made available to class members prior to the deadline for objections in order that they have a full and fair opportunity to contest the fee sought.

### B.    The Settlement is Fair, Adequate, and Reasonable and Should be Granted Final Approval.

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Svc. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  "[T]here is an overriding public interest in settling and quieting litigation" and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).  In evaluating a proposed class action settlement, "[t]he universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable." *Officers for Justice*, 688 F.2d at 625 (citations omitted); *accord Torrisi*, 8 F.3d at 1375.  "A district court may consider some or all of the following factors when making this determination: 'the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.'" *In re*

*High-Tech Emple. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 U.S. Dist. LEXIS 118051, at *8 (N.D. Cal. Sep. 2, 2015) (*citing Officers for Justice*, 688 F.2d at 625).

The court is entitled to exercise its "sound discretion" when deciding whether to grant final approval. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi*, 8 F.3d at 1375. "Estimates of what constitutes a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." *Browne v. Am. Honda Motor Co.*, 2010 U.S. Dist. LEXIS 145475, at *40 (C.D. Cal. July 29, 2010); *accord In re High-Tech Emple. Antitrust Litig.*, 2015 U.S. Dist. LEXIS 118051, at *17. Thus, "'[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.'" *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (citation omitted).

"In addition, the settlement may not be the product of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). Settlement negotiations in this case were conducted over more than six months after extensive investigation and discovery, with the input of the Named Plaintiffs, and at arm's length with the assistance of a mediator. Renick Decl. ¶¶ 7-8, 28. "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, No. 03-cv-2878-SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007). Thus, the proposed class settlement is the result of serious, informed, non-collusive, and good-faith negotiations.

The recovery here is fair, reasonable, and adequate in light of the substantial benefit conferred on the class members and the risk, expenses, and uncertainty of continued litigation.

### 1.   The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

In evaluating the fairness, reasonableness, and adequacy of the Settlement, the

Court should weigh the strength of Plaintiffs' case against the risk and expense of continued litigation. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In determining whether a proposed settlement is reasonable and adequate, "the [trial] judge does not try out or attempt to decide the merits of the controversy," and an appellate court "need not and should not reach any dispositive conclusions on the admittedly unsettled legal issue." *City of Detroit v. Grinnell Corp*., 495 F.2d 448, 454 (2d Cir. 1974). Here, while Plaintiffs believe their case against Defendants is strong, the Settlement eliminates significant risks they would face if the action were to proceed against Defendants.

Plaintiffs believe that the California Supreme Court's clarification of the off-duty nature of rest breaks in *Augustus v. ABM Security Services, Inc*., 2 Cal. 5th 257 (2016), provided clear guidance regarding an employer's rest break obligations under California law and confirmed Defendants' failure to provide Operators with lawful rest breaks. While Plaintiffs believed that the decision provided clear guidance regarding employer's rest break obligations under California law and confirmed Defendants' failure to provide its operators with lawful rest breaks, district courts have since diverged in their interpretation and application of the decision. *See, e.g., Bell v. Home Depot U.S.A., Inc*., No. 2:12-cv-02499 JAM-CKD, 2017 U.S. Dist. LEXIS 55442, at *5 (E.D. Cal. Apr. 10, 2017) (concluding *Augustus* not applicable because the court did not consider an on-premises rest break policy which does not require employees to remain on call).

In addition, Defendants PBF Energy Limited and Torrance Refining Company LLC have taken the position that the class period ended on September 20, 2018, when California Governor Gavin Newsom approved Assembly Bill No. 2605, a law which exempts employees who hold safety-sensitive positions at petroleum refineries from rest break laws to the extent they are required to carry radios, respond to emergencies, and remain on the employer's premises during their shifts. *See* Cal. Lab. Code § 226.75(a). Plaintiffs' position is that based on the plain language of AB 2605, the exemption does not apply to "existing cases filed before the effective date" of the law, as this one was.

1  Cal. Lab. Code § 226.75(g). Renick Decl. ¶ 6.

2       Moreover, with class claims for violation of rest break and other wage and hour

3  laws, litigation can extend for many years due to the many hurdles facing plaintiffs in

4  class actions. *See, e.g.*, Renick Decl. ¶¶ 36-37 (class actions involving overtime, living

5  wage, and/or meal and rest break violations litigated five years, six years, and more than

6  10 years before resolving).  Further, it was likely that the action would be highly

7  contested and lengthy given the inherently complex nature of class actions and the

8  manner in which a prior wage and hour class action involving similar classes of refinery

9  workers was litigated.  *Id*. at ¶ 38.  Accordingly, many more years of litigation and an

10  appeal was a very real possibility here.  Continued litigation against Defendants would

11  inevitably involve significant additional expenses and protracted legal battles, which are

12  avoided through settlement.  *In re Visa Check/Mastermoney Antitrust Litig*., 297 F.

13  Supp. 2d 503, 510 (E.D.N.Y. 2003), aff'd 396 F.3d 96 (2d Cir. 2005) ("The potential for

14  this complex litigation to result in enormous expense, and to continue for a long time,

15  was great.").  Thus, on balance, these factors weigh in favor of the Settlement.

16      **2.**    **The Amount Offered in Settlement**

17       "In most situations, unless the settlement is clearly inadequate, its acceptance and

18  approval are preferable to lengthy and expensive litigation with uncertain results."

19  *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

20  Approval of a class settlement is justified where "the settlement terms compare

21  favorably to the uncertainties associated with continued litigation regarding the

22  contested issues in th[e] case."  *Id.* at 526.  A settlement, therefore, need not obtain

23  100% of the damages and may, in fact, provide only "a fraction of the potential

24  recovery" sought to be found fair and reasonable.  *Linney*, 151 F.3d at 1242.

25       The settlement here provides for the payment of $4,391,585.  Renick Decl. ¶ 17.

26  The net settlement to be distributed to the Class after the reduction of the LWDA

27  payment for PAGA penalties, attorneys' fees, costs, incentive awards, and

28  administration costs is $3,215,745.13. Johnson Decl. ¶ 16, and Ex. 2 thereto. The

average payment to the 338 Class Members with Qualifying Shifts is $9,514.04. *Id*. Thus, the financial benefit conferred upon the class is significant.

Additionally, based on Plaintiffs' assessment of damages and the review of timecard and payroll data encompassing all shifts during the class period, the settlement represents 56% of the damages incurred during the class period. Renick Decl. ¶ 29.

### 3.     The Extent of Discovery and Stage of the Proceedings

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney*, 151 F.3d at 1239. Plaintiffs conducted extensive investigation of Defendant's wage and hour practices, which included, among other things, conducting interviews of operators, reviewing employee handbooks, training materials and emergency protocol materials, as well as the payroll and timecard data of all Class Members produced by Defendant. Renick Decl. ¶ 8. Thus, the parties had more than sufficient information to make an informed decision about settlement.

### 4.     Experience and Views of Counsel

It is Class Counsel's recommendation and belief that the proposed settlement is in the best interests of the Settlement Class. Renick Decl. ¶ 30; Young Decl. 9.

> Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.

*DirecTV*, 221 F.R.D. at 528 (internal quotations, alterations, and citations omitted).

This Settlement is the product of arms-length, non-collusive negotiations attended by experienced class counsel.  Renick Decl. ¶ 28.  Prior to settlement, a complete investigation of Defendants' wage and hour practices with regard to rest breaks and an extensive review of timecard and payroll data were conducted to evaluate liability and damages. Renick Decl. ¶ 8. Based on their evaluation and expertise, Class Counsel strongly believe that the settlement is a fair, reasonable, and adequate resolution of the

claims of the Settlement Class and is preferable to continued litigation.[5]  Renick Decl. ¶¶ 30-38; Young Decl. ¶¶ 3-9.

### 5.    The Presence of Governmental Entities

There are no government entities participating in the Settlement.  Plaintiffs, however, provided a copy of the Settlement Agreement to the California Labor and Workforce Development Agency ("LWDA") in accordance with Labor Code § 2699(l)(2) on March 16, 2020.  Renick Decl. ¶ 39, Ex. 2 thereto.  As of the filing of this motion, the LWDA has not filed an objection or raised a concern regarding the Settlement. *Id.*  In addition, Defendants provided notice of settlement pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, to the California CAFA Coordinator at the Office of the Attorney General, Consumer Law Section, the U.S. Attorney General, and Attorneys General in specified offices on April 3 and 6, 2020. *See* Dkts. 35, 36. No objection has been filed or concern raised by any of the attorneys general regarding the settlement. Neither attorney general's office has filed an objection or raised a concern regarding the Settlement.  Renick Decl. ¶ 40.

The absence of any objection or concern raised by a government entity provided notice weighs in favor of the Settlement.

### 6.    The Reaction of the Class Members

The reaction of the Class Members has been very positive and favors approval of the Settlement.  Here, the Notice informed Settlement Class Members that Opt-Out Requests were to be sent to the Claims Administrator, such that they are postmarked on or before July 24, 2020. The Notice also sets forth the information that must be included in each Opt-Out Request. Ex. 1 to Johnson Decl. at 5-6. In addition, the Notice informed Settlement Class Members that Objections were to be filed or mailed to the Court, such

---

[5] Class Counsel "represents [the] interests of the class as a whole" and it is Class Counsel's responsibility to "determine whether seeking the court's approval of a settlement would be in the best interests of the class as a whole."  Fed. R. Civ. P. 23, cmts. 2003 amdts., ¶ (B)(1).

NOTICE OF AND MOTION FOR FINAL APPROVAL
OF SETTLEMENT AGREEMENT; DECLS AND EXHIBITS/ Case No. 2:18-cv-9224 MWF (SSx)

that they are postmarked on or before July 24, 2020.  *Id.* at 6.  No Class Member has objected to the Settlement, and none have opted out. Johnson Decl. ¶¶ 12-13.  Two disputes were submitted, which have been resolved by the Claims Administrator after review of the data provided by the Class Member and Defendants. *Id.* at ¶ 14.

### C.     The Plan of Allocation Is Fair, Adequate, and Reasonable and Should be Approved.

"Approval of a plan for the allocation of a class settlement fund is governed by the same legal standards that are applicable to approval of the settlement: the distribution plan must be 'fair, reasonable, and adequate.'" *In re Citric Acid Antitrust Litig.,* 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001).  Here, the plan of allocation provides that court-approved attorneys' fees and costs, court-approved service awards, administrative costs, and payment to the LWDA under PAGA are deducted from the Settlement Fund ($4,391,585) to determine the "Net Settlement Proceeds."  Renick Decl., Ex. 1, ¶¶ 33-34, 54. The Net Settlement Proceeds are then allocated for each member of the Settlement Class. *Id.* at ¶¶ 55-56.

*Attorneys' Fees*—With respect to awarding attorneys' fees, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).  Plaintiffs concurrently file their Motion for Attorneys' Fees and Reimbursement of Costs seeking fees in the amount of $1,097,896.00 (25% of the settlement) and $7,607.77 in costs, which was posted to the case website on June 25, 2020.[6] Renick Decl. ¶¶ 21-23; Johnson Decl. ¶ 6.f. The motion reflects that the fees and costs requested by Plaintiffs are reasonable and justified based on the relevant factors weighed in determining such awards. Moreover, the request is void of any evidence of collusion, such as counsel receiving a disproportionate

---

[6] While Plaintiffs' fee request and the amount sought in costs remain the same, Plaintiffs' Counsel will file supplemental declarations detailing additional lodestar incurred since June 25, 2020 in connection with class member meetings, administration, and the final approval hearing. Renick Decl. ¶ 23.

distribution in comparison to the class, a negotiated "clear sailing agreement," or the reversion to Defendants of any unawarded fee amount. *See Bluetooth*, 654 F.3d at 947. Here, Plaintiffs seek fees at the Ninth Circuit's 25% of the fund benchmark, Defendants have only agreed not to oppose a reasonable fee request, and the entire settlement amount is non-reversionary. Renick Decl. ¶ 21, and Ex. 1, ¶¶ 42.

*Incentive Awards*—As addressed herein, *see infra* Section III.D., Plaintiffs seek an incentive award in the amount of $7,500 for each of the two Named Plaintiffs. "The Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878, at *28 (N.D. Cal. Apr. 29, 2011) (*citing Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)). Here, the amount sought is reasonable and fair based on the services provided and risks incurred by each during the course of the class action litigation.

*Administrative Costs*—Plaintiffs also request final approval of claims administration costs to be paid to Claims Administrator CAC Services in the amount of $17,836.10. Johnson Decl. ¶ 17, and Ex. 3 thereto. "Courts regularly award administrative costs associated with providing notice to the class." *Bellinghausen*, 306 F.R.D. at 266. The amount requested is fair and reasonable given that the Claims Administrator promptly and properly distributed the Class Notice to Class Members and has performed its duties in accordance with the Settlement terms. Johnson Decl. ¶¶ 4-16.

*PAGA penalties*—The Settlement provides that $50,000 will be allocated to penalties under the Private Attorneys General Act ("PAGA"), with 75% of the PAGA penalties ($37,500) being paid to the California Labor and Workforce Development Agency ("LWDA") and 25% of the PAGA penalties ($12,500) being paid to Settlement Class Members who do not opt out. Renick Decl. ¶ 20. This amount is reasonable and adequate given that the possible recovery on the PAGA claim varies tremendously from thousands to a few million dollars, and that there is "a substantial risk of recovering

nothing" or very little. *See, e.g., Viceral v. Mistras Group, Inc*. No. 15-cv-02198-EMC, 2017 WL 661352 (N.D. Cal. Feb. 17, 2017), at *3. For instance, in *Viceral v. Mistras Group, Inc.*, the Court granted final approval of a $6,000,000 settlement with a $20,000 allocation for the PAGA claim because plaintiffs faced "a substantial risk of recovering nothing on either the PAGA or class claims." *Id.* The court referred to its prior considerations at preliminary approval, which included that "courts have often exercised discretion to reduce PAGA verdicts below the statutory penalty." *Id.* at *8. This Court should, therefore, approve the $50,000 allocation for the PAGA claim as adequate and reasonable, especially since the LWDA has filed no objection despite being served with notice of settlement on March 16, 2020. Renick Decl. ¶ 39.

*Class Member Payments*—The formula in the Settlement Agreement provides to each Class Member a cash payment which equates to a percentage of the net recovery calculated based upon the number of Qualifying Shifts worked during the class period. Renick Decl. ¶ 18. Specifically, the formula for allocation of the Net Settlement Proceeds among the members of the Settlement Class is as follows:

One Credit is allocated to each Class Member equal to the Class Member's number of "Qualifying Shift." A Qualifying Shift is defined as "(i) a shift of at least twelve (12) continuous hours worked as an Operator by a Class Member; or (ii) a shift scheduled for at least twelve (12) continuous hours, worked as an Operator by a Class Member for a period of at least three and one-half (3½) hours, and for which the employee has not previously been paid an hour of premium pay for a missed or interrupted rest period for the subject workday." Renick Decl., Ex. 1, ¶¶ 15, 31, 55.  The value of each Credit ("Credit Value") equals the Net Settlement Proceeds divided by the total number of Credits for all Class Members. *Id.* at ¶ 55. "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 U.S. Dist. LEXIS 21593, at *3 (N.D. Cal. June 18, 1994). The formula here is reasonable as it relies on a "neutral and uniform metric by which to allocate the Settlement." *See In re High-Tech*, 2015 U.S.

NOTICE OF AND MOTION FOR FINAL APPROVAL
OF SETTLEMENT AGREEMENT; DECLS AND EXHIBITS/ Case No. 2:18-cv-9224 MWF (SSx)

Dist. LEXIS 118051, at *23-24 (finding plan of allocation appropriate where formula was based on each Class Member's relative share of base salary, a "neutral and uniform metric").

Following the issuance of an order granting final approval of the settlement and plan of allocation, the Claims Administrator will pay from the fund the court-ordered amounts and carry out the distribution of the Net Settlement Proceeds by mailing individual checks to the Settlement Class Members. Renick Decl., Ex. 1, ¶ 92. If any checks remain uncashed, the Claims Administrator will attempt to locate the impacted Class Member, with the assistance of Class Counsel, and re-issue checks with an expiration of 180 days. *Id*. at ¶ 93.  If any Settlement Class Member cannot be located within 180 days, uncashed settlement checks will be awarded *cy pres* to the Loyola Law School Worker's Rights Clinic in Los Angeles, California. *Id*. The law school clinic is a proper *cy pres* awardee because the nexus between the clinic, which provides training on workers' rights and advocacy, and the California labor laws at issue in this case is sufficiently direct. *See Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (a *cy pres* award should be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class); *see* Renick Decl. ¶ 44.

For all of the reasons set forth herein and the accompanying declarations, the plan of allocation is fair, reasonable, and should be approved.

### D. The Court Should Grant Plaintiffs' Request for Incentive Awards for the Six Named Plaintiffs.

The requested incentive awards in the amount of $7,500 for each of the two Named Plaintiffs is consistent with a fair, just and adequate settlement.[7]  "Courts routinely approve incentive awards to compensate named Plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."

---

[7] The incentive award is in addition to the Named Plaintiffs' Class Member share of the settlement.

NOTICE OF AND MOTION FOR FINAL APPROVAL
OF SETTLEMENT AGREEMENT; DECLS AND EXHIBITS/ Case No. 2:18-cv-9224 MWF (SSx)

*Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000); *see also Staton*, 327 F.3d at 977 (9th Cir. 2003) (reasonable incentive payments are appropriate for named plaintiffs); *In re Continental Illinois Securities Litig.*, 962 F.2d 566, 571 (7th Cir. 1992) (stating that an incentive award in such amount "as may be necessary to induce [the class representative] to participate in the suit" is appropriate). Plaintiffs' incentive award request is based upon (1) the actions taken by the Named Plaintiffs to protect the interests of the class and the degree to which the class has benefitted from those actions; (2) the time and effort the Named Plaintiffs expended in pursuing the litigation; (3) the risk each undertook in commencing suit; and (4) the proportion of the payments relative to the settlement amount and the average settlement amount. *Staton*, 327 F.3d at 977; *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 U.S. Dist. LEXIS 38667, at *94 (N.D. Cal. Apr. 1, 2011).

The class has greatly benefited from the Named Plaintiffs' assistance in the litigation. The Named Plaintiffs ensured a fair settlement of the case by securing and providing class counsel the information necessary to file the complaint, assisting class counsel in preparation for mediation, traveling to and participating at the mediation, engaging in settlement negotiations, communicating regularly with class counsel, and, after a settlement was reached, discussing the settlement terms with members of the putative class. Declaration of Michelle Kendig ("M. Kendig Decl."), ¶¶ 3-10; Declaration of Jim Kendig ("J. Kendig Decl."), ¶¶ 3-10. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 268 (N.D. Cal. 2015) (awarding $15,000 for the plaintiff's time spent securing and speaking with counsel, reviewing documents, assisting counsel in preparing for mediation, traveling to the mediation session, and engaging in settlement negotiations and for the risks associated with initiating the litigation); *see also Chu v. Wells Fargo Invs.*, LLC, No. C 05-4526 MHP, 2011 U.S. Dist. LEXIS 15821, at *14 (N.D. Cal. Feb. 15, 2011) (awarding $10,000 to each named plaintiff because they adequately demonstrated they assisted in the preparation and settlement of the litigation notwithstanding some risk of professional harm due to their public

20

1    participation).  USDC Northern District Judge Gonzalez Rogers approved incentive

2    awards in the amount of $7,500 to each of the named plaintiffs in a similar rest break

3    cases filed by Hadsell Stormer Renick & Dai and Gilbert & Sackman against Phillips

4    66 Company. *See Buzas v. Phillips 66 Company*, No. 4:17-cv-00163-YGR (N.D. Cal.),

5    Dkt. 47 (N.D. Cal. Mar. 6, 2018).

6        When a class representative shoulders some degree of personal risk in joining the

7    litigation, such as workplace retaliation or financial liability, an incentive award is

8    especially important.  *Staton*, 327 F.3d 977; *see also Bellinghausen,* 306 F.R.D. at 267

9    (finding incentive awards particularly appropriate in wage-and-hour actions because

10   plaintiffs undertake a significant "reputational risk" by bringing suit against their

11   employers).  Here, both of the Named Plaintiffs, current employees, took the risk that

12   future employment, whether it was with Defendants or another refinery, would be

13   jeopardized. M. Kendig Decl., ¶¶ 11-12; J. Kendig Decl., ¶¶ 11-12. They took this risk

14   while others chose not to, and they took the risk to benefit the other class members.

15       The size of the incentive awards – $7,500 to each of the two Named Plaintiffs –

16   falls within the typical range of incentive awards approved by other California federal

17   courts in class action cases. *See Bellinghausen*, 306 F.R.D. at 267 ("Incentive awards

18   typically range from $2,000 to $10,000."); *Chu,* No. C 05-4526 MHP, 2011 U.S. Dist.

19   LEXIS 15821, at *14 (finding $10,000 in line with other incentive awards in this

20   Circuit); *Spalding v. City of Oakland*, No. 11-cv-02867 TEH, Dkt. No. 99 (N.D. Cal.

21   Sept. 9, 2013) (approving $9,000 incentive award); *Covillo v. Specialty's Café,* No. C-

22   11-00594 DMR, 2014 U.S. Dist. LEXIS 29837, at *28-29 (N.D. Cal. Mar. 6, 2014)

23   (approving an $8,000 incentive award for each of the three named plaintiffs).

24       The incentive awards here are also proportionate to the monetary relief provided

25   by the Settlement Agreement. The proposed $7,500 awards are less than the average

26   class member award of $9,514.04.  Courts have consistently approved incentive awards

27   that were far higher in comparison to individual awards.  *See Lemus*, 2012 U.S. Dist.

28   LEXIS 119026, at *2 (approving $15,000 service awards where the average class

1  recovery was about $1,200); *In re Capital One Tel. Consumer Prot. Act Litig.*, 2015
2  U.S. Dist. LEXIS 17120, at *7 (N.D. Ill. Feb. 12, 2015) (approving $5,000 service
3  awards where class members who made timely claims were entitled to "at least
4  $39.66"). Moreover, Named Plaintiffs agreed to a general release of all claims they
5  might have against Defendants. Renick Decl. ¶ 19.

6       Finally, the incentive awards, totaling $15,000, are less than 0.3% of the gross
7  settlement. This percentage is well in line with those found to be acceptable in other
8  class actions. *See In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d at 463 (approving
9  incentive award of $5,000 to two plaintiff representatives in $1.75 million settlement,
10  comprising 0.56% of the total settlement amount); *Sandoval v. Tharaldson Employee*
11  *Mgmt, Inc.*, 2010 U.S. Dist. LEXIS 69799, at *26-27 (awarding $7,5000 incentive
12  payment to named plaintiff, comprising 1% of gross settlement amount).

13       **E.    Final Certification of the Class for Settlement Purposes Is Proper.**
14       The Court should reaffirm its finding at preliminary approval that certification of
15  the class for settlement is proper under Rule 23(b)(3), *see* Dkt. 43. A district court must
16  give "'undiluted, even heightened, attention in the settlement context' to scrutinize
17  proposed settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, Nos. 15-56014,
18  15-56025, 15-56059, 15-56061, 15-56064, 15-56067, 2018 U.S. App. LEXIS 1626, at
19  *36 (9th Cir. Jan. 23, 2018) (citation omitted). Here, the numerosity, commonality,
20  typicality, and adequacy of representation prerequisites under Rule 23(a) are met, and
21  common questions of law and fact predominate under Rule 23(b)(3).

22       **1.    The Settlement Class Satisfies the Rule 23(a) Requirements**
23       *Numerosity*—Based on the Claims Administrator's review of the data from
24  Defendants, the Settlement Class includes 338 members. Johnson Decl. ¶¶ 6.a., 6.g.
25  The proposed class is, therefore, so large that joinder is not practicable and disposition
26  of their claims as a class will benefit the parties and the Court. *See Slaven v. BP*
27  *America, Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000) ("As a general matter, courts have
28  found that numerosity is satisfied when class size exceeds 40 members. . . .").

*Commonality*—To show commonality, a plaintiff "must demonstrate that there are questions of fact and law that are common to the class." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(a)(2)).  Here, Plaintiffs assert that there are common questions of fact and law arising from the putative class members' employment, including whether Defendants failed to authorize and permit class members to take rest periods in accordance with applicable California law because they failed to relieve class members of all work duties during their rest periods.

*Typicality*—"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  The claims alleged by the Named Plaintiffs arise out of the challenged practices and common course of conduct by Defendants and are based on the same legal theories as the claims of the putative class members; thus, they are typical of those claims which could be alleged by any member of the proposed class.  Further, the relief sought by Named Plaintiffs is typical of the relief which would be sought by each member of the proposed class if they were to file separate actions.

*Adequacy of Representation*—To determine whether named plaintiffs will adequately represent a class, courts look to (a) whether the named plaintiffs and their counsel have any conflicts of interest with other class members, and (b) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class.  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 462 (*citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).  Here, Named Plaintiffs are proper representatives of the proposed class because neither the Named Plaintiffs nor their counsel have any apparent conflicts of interest with the absent members of the Settlement Class, and their claims arise out of the same set of facts as those of the Settlement Class.  The Named Plaintiffs have been committed to the vigorous

prosecution of this case and have reached a resolution they believe is in the best interests of the Settlement Class.  Renick Decl. ¶ 30; Young Decl. ¶ 9; M. Kendig Decl. ¶ 3-12; and J. Kendig Decl. ¶ 3-12.  Moreover, Plaintiffs' counsel, Hadsell Stormer Renick & Dai and Gilbert & Sackman are highly experienced class counsel, having handled dozens of similar wage and hour class actions, as well as other types of class and complex litigation.  Renick Decl. ¶¶ 30-38; Young Decl. ¶¶ 3-9.

### 2.      The Settlement Class Meets the Requirements of Rule 23(b)

Pursuant to Rule 23(b)(3), class adjudication is proper if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and [] a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  *Sandoval v. Roadlink United States Pac., Inc.*, No. EDCV 10-00973 VAP(DTBx), 2011 U.S. Dist. LEXIS 130378, at *2 (C.D. Cal. Oct. 9, 2011).

*Predominance of common issues*—"Common issues predominate over individual issues when the common issues represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication."  *Edwards v. The First Am. Corp.*, 798 F.3d 1172, 1182 (9th Cir. 2015).

Under California law, an employer is required to authorize and permit all employees to take duty free rest periods of 10 minutes per four hours of work or major fraction thereof.  Wage Order 1-2001 §12(A); *see Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1032 (2012).  In *Augustus*, the California Supreme Court held that "an employer cannot satisfy these obligations under Wage Order 4, subdivision 12(A) while requiring the employees to remain on call."  *Id.* at 270.  Plaintiffs' primary claim, that Defendants' lack of a rest break policy or practice which authorizes and permits duty-free rest breaks and its uniform failure to provide such breaks violate California law.  This issue is suitable for class adjudication because it pertains to all members of the class.  *See Bradley v. Networkers Int'l, LLC*, 211 Cal. App. 4th 1129, 1150 (2012) ("The lack of a meal/rest break policy and the uniform failure to authorize

such breaks are matters of common proof.").  Common issues, therefore, predominate over any individual issues.

*Superiority*—"The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023.  "This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Id.* at 1023. Here, Plaintiffs assert that the prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for Defendants, and resulting in the impairment of putative class members' rights and the disposition of their interests through actions to which they are not parties. The prosecution of separate actions and individualized litigation would also increase the delay and expense to all parties and the court system.  Finally, compared with other methods such as intervention or the consolidation of individual actions, a class action is fairer and more efficient.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order granting Plaintiffs' Motion for Final Approval of Settlement and enter Judgment.

DATED:  August 3, 2020          Respectfully submitted,

HADSELL STORMER RENICK & DAI LLP

GILBERT & SACKMAN, A LAW
CORPORATION


*/s/ Randy Renick*
Randy Renick
Attorneys for Plaintiffs Michelle Kendig and Jim
Kendig