UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 18-9224-MWF-SSx                **Date:  August 24, 2020**
Title:     Michelle Kendig, et al. v. ExxonMobil Oil Corp., et al.

Present:   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

|  |  |
|---|---|
| Deputy Clerk: | Court Reporter: |
| Rita Sanchez | Not Reported |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| None Present | None Present |

**Proceedings (In Chambers):**   ORDER RE: PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF SETTLEMENT AGREEMENT [48];
PLAINTIFF'S MOTION FOR ATTORNEY FEES
AND REIMBURSEMENT OF COSTS [47]

Before the Court are two motions.  The first is Plaintiffs Michelle Kendig and Jim Kendig's Motion for Final Approval of Settlement Agreement (the "Settlement Motion"), filed on August 3, 2020 (Docket No. 48).  The second is Plaintiffs' Motion for Attorney Fees and Reimbursement Costs (the "Fee Motion"), also filed on August 3, 2020 (Docket No. 47).  On August 6, 2020, Defendants ExxonMobil Oil Corporation and ExxonMobil Pipeline Company (collectively "Exxon"), along with PBF Energy Limited ("PBF") and Torrance Refining Company, LLC ("Torrance") (collectively "TORC Defendants") filed a Non-Opposition.  (Docket No. 49).

The Court has read and considered the papers filed on each motion, and held a telephonic hearing on **August 17, 2020,** pursuant to General Order 20-09 in response to the COVID-19 pandemic.  For the reasons discussed below, the Court rules as follows:

- The Settlement Motion is **GRANTED**.  The proposed settlement is fair, reasonable, and adequate.

- The Fee Motion is **GRANTED.**  Class Counsel's request for 25% of the fund, $1,097,896, is reasonable under both the percentage-of-recovery method and the

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 18-9224-MWF-SSx                    Date:  August 24, 2020**
Title:      Michelle Kendig, et al. v. ExxonMobil Oil Corp., et al.

Lodestar Method. Class Counsel's request for cost reimbursement in the amount
of $7,607.77 is also reasonable.

## I.    **BACKGROUND**

### A.    **Factual and Procedural Background**

On September 18, 2018, Plaintiffs commenced their class action in the Los
Angeles County Superior Court.  (*See* Notice of Removal ("NoR") (Docket No. 1), Ex.
A (Complaint) (Docket No. 1-1)).  The TORC Defendants removed the action on
October 26, 2018.  (*See generally* NoR).

The Complaint contains the following allegations:

Michelle Kendig works as a Head Operator in the tank farm/oil movement at the
Torrance refinery.  (Complaint ¶ 31).  She has worked at the refinery for approximately
21 years and typically works 12-hour shifts on a rotating schedule.  (*Id.*).  Jim Kendig
works as an Operator in the hydrotreater at the Torrance refinery.  (*Id.* ¶ 32).  He has
worked at the refinery for approximately 25 years, and he typically works 12-hour
shifts on a rotating shift schedule.  (*Id.* ¶ 32).

Exxon operated the Torrance refinery from September 18, 2014 until about July
1, 2016.  (*Id.* ¶ 9).  TORC Defendants acquired the Torrance Refinery from Exxon and
have operated the facility since July 1, 2016.  (*Id.* ¶ 10).

Plaintiffs bring this action on behalf of themselves and all current and former
hourly employees of Exxon, PBF, and Torrance, who worked a 12-hour rotating shift
at the Torrance refinery, distribution, and pipeline facilities since September 18, 2014.
(*Id.* ¶ 4).

Oil refining, distribution, and production process requires constant monitoring,
and therefore, operators work a continuous rotating shift during which time they are
never fully relieved from duty.  (*Id.* ¶ 13).  Plaintiffs and the other operators are
scheduled for and work 12-hour shifts, during the entirety of which Defendants

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-9224-MWF-SSx                    Date:  August 24, 2020
Title:      Michelle Kendig, et al. v. ExxonMobil Oil Corp., et al.

required them to remain on duty.  (*Id.* ¶ 14).  Throughout their shifts, Plaintiffs and other operators were required to monitor the refining process, respond to upsets and critical events, and maintain the safe and stable operation of their units.  (*Id.* ¶ 15).  In order to do so, Plaintiffs and other operators are required to remain attentive, carry radios, and be reachable at all times during their shifts.  (*Id.*).  Plaintiffs are also required to remain in contact with supervisors and other employees working in their unit throughout their shifts.  (*Id.*).  As a result, Plaintiffs never receive off-duty breaks. (*Id.*).

Because operators are responsible for their units throughout their shifts and are not given designated rest breaks or relief, Defendants have not authorized or permitted Plaintiffs to take off-duty rest breaks for every four-hour work period or major fraction thereof, as required by law.  (*Id.* ¶ 16).  Defendants also do not have a policy or system for providing relief to Plaintiffs to allow them to take off-duty rest breaks.  (*Id.* ¶ 17). Defendants have not paid Plaintiffs an extra hour of wages for each work day during which they were not provided the off-duty rest breaks to which they were entitled under California law.  (*Id.* ¶ 18).  Defendants also routinely failed to maintain complete and accurate payroll records for Plaintiffs showing the gross and net wages earned, including wages for missed rest breaks.  (*Id.* ¶ 19).

Based on the above allegations, the Complaint alleges four claims for relief: (1) failure to authorize and permit rest periods; (2) failure to furnish accurate wage statements; (3) civil penalties pursuant to the Private Attorney General Act, Labor Code section 2698, *et seq.*; and (4) violation of California's Unfair Business Practice and Unfair Competition, Cal. Bus. & Prof. Code §§ 17200, *et seq*.  (*Id.* ¶¶ 33-59).  The Complaint seeks various relief, including unpaid wages, statutory penalties, restitution, attorneys' fees and costs, interest, and injunctive and declaratory relief.  (*Id.* at 13).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-9224-MWF-SSx                    Date:  August 24, 2020
Title:      Michelle Kendig, et al. v. ExxonMobil Oil Corp., et al.

### B.   Discovery and Mediation

In a declaration filed with the Settlement Motion, Plaintiffs assert that they conducted extensive investigation of Defendants' wage and hour practices at the Torrance Refinery, particularly in regard to the provision of rest breaks.  (Declaration of Randy Renick ("Renick Decl.") ¶ 6 (Docket No. 48-1)).  Plaintiffs interviewed operators at the refinery, reviewed thousands of written materials, including employee handbooks, training materials, and emergency protocol materials.  (*Id.*).  In addition, Plaintiffs reviewed Defendants' payroll and timecard data containing all of the shifts worked by each class members during the class period.  (*Id.*).  Based on this investigation and discovery, Plaintiffs were able to evaluate liability and determine damages.  (*Id.*).

On August 23, 2019, the parties participated in a full day mediation session with T. Warren Jackson in San Francisco, California.  (*Id.* ¶ 5; Settlement Motion at 4).  As a result of the mediation, the parties reached a partial settlement, which was subsequently finalized over the next several months.  (Renick Decl. ¶ 5).

### C.   The Settlement

The proposed settlement agreement (the "Settlement Agreement" or "Agreement") is attached to Renick's Declaration as Exhibit 1.  (Renick Decl., Ex. 1 (Docket No. 48-2)).

On May 4, 2020, the Court issued an order instructing Plaintiffs to file a supplemental declaration providing additional details regarding the settlement.  (Docket No. 41).  On May 11, 2020, Plaintiffs' counsel Randy Renick filed a supplemental declaration ("Renick Supp. Decl.").  (Docket No. 42).

The Agreement contains the following key class definition, relief, notice, and release provisions:

- "Class" or "Class Members" is defined as: "[a]ll current and former non-exempt hourly employees holding an Operator position while employed by ExxonMobil

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 18-9224-MWF-SSx**                    **Date:  August 24, 2020**
Title:      Michelle Kendig, et al. v. ExxonMobil Oil Corp., et al.

Oil Corporation, ExxonMobil Pipeline Company, PBF Energy Limited, and/or Torrance Refining Company LLC, or any of their affiliates, working at the Torrance refinery, distribution and pipeline facilities in the state of California, County of Los Angeles, at any time during the time period beginning September 18, 2014 and ending on the date of Preliminary Approval." (Agreement ¶ 28).

- "Class Period" is defined as "the period beginning September 18, 2014 and ending on the date of Preliminary Approval." (Agreement ¶ 13).

- "Participating Class Members" is defined as "putative Class Members who do not timely exercise their right to opt of the class." (Agreement ¶ 29).

- "Named Plaintiffs" is defined as Michelle Kendig and Jim Kendig. (Agreement ¶ 23).

- "Release Parties" includes TORC Defendants, Exxon Defendants, and each of their past and present successors, subsidiaries, parents, holding companies, sister and affiliated companies, divisions and other related entities. (Agreement ¶ 26).

- "Qualifying Shift" is defined as: (i) a shift of at least twelve continuous hours worked as an Operator by a Class Member; or (ii) a shift scheduled for at least 12 continuous hours, worked as an Operator by a Class Member for a period of at least three and one-half (3 ½) hours, and for which the employee has not previously been paid an hour of premium pay for a missed or interrupted rest period for the subject workday. (Agreement ¶ 31).

- Exxon Defendants agree to pay $1,491,372 and the TORC Defendants agree to pay $2,900,213, for a total of $4,391,585 (the "Settlement Fund"). (Agreement ¶¶ 30, 33). The Settlement Fund is the maximum total amount Defendants are required to pay for any and all purposes under this Settlement Agreement, except that Defendants will pay the employer's share of any payroll taxes (FICA and FUDA) for wages it pays pursuant to the Agreement. (*Id.*).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 18-9224-MWF-SSx**                    **Date:  August 24, 2020**
Title:      Michelle Kendig, et al. v. ExxonMobil Oil Corp., et al.

- This is a non-reversionary settlement in which Defendants are required to pay the entire gross settlement amount.  No portion of the Settlement Fund will revert to any Defendant.  (*Id.* ¶ 34).

- The Settlement Fund will be used for the following: (i) payments to Participating Class Members; (ii) payments to the State of California Labor and Workforce Development Agency "LWDA") under the Private Attorneys General Act ("PAGA") ($50,000)  (*Id.* ¶ 49); (iii) Service Awards paid to the Named Plaintiffs ($7,500 each) (*Id.* ¶ 36); (iv) Class Counsel's Attorney's Fees and Costs; and (v) Administrative Costs.  (*Id.* ¶ 30).

- $50,000 of the Settlement Fund has been allocated to PAGA penalties with 75% of the penalties ($37,500) being paid to the LWDA and 25% of the penalties ($12,500) being paid to Settlement Class Members who do not opt out. (Agreement ¶ 49).

- The two Named Plaintiffs will apply for Service Awards for an amount not to exceed $7,500 for each.  (Agreement ¶ 36).

- Class counsel may request a reasonable award of Attorneys' Fees and Costs. (Agreement ¶ 42).  Class Counsel will submit an application for Attorneys' Fees and Costs prior to the date of the Final Approval Hearing.  (*Id.* ¶ 43).  The amount awarded to Class Counsel shall be left to the discretion of the Court. (*Id.*).

- CAC Services, Inc. ("CAC" or "Administrator") will serve as the Claims Administrator for the purpose of administering the settlement and claims process.  (Agreement ¶ 35).

- The "Net Settlement Proceeds" shall equal the Settlement Fund minus the court-approved attorneys' fees, costs, Service Awards, Administrative Costs, and Payment to LWDA for PAGA penalties.  (Agreement ¶ 54).  The net settlement will be distributed among the class based on number of Credits.  (*Id.* ¶ 55).  A

---

**CIVIL MINUTES—GENERAL**                                                          **6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-9224-MWF-SSx                 Date:  August 24, 2020
Title:       Michelle Kendig, et al. v. ExxonMobil Oil Corp., et al.

Credit will be given to each Qualifying Shift worked by a member of the
Settlement Class during the Class Period.  (*Id.*).  Any Class Members who have
at least one Qualifying Shift but no more than 25 Qualifying Shifts shall receive
25 Credits.  (*Id.*).  The monetary value of each Credit ("Credit Value") will
equal the Net Settlement Proceeds divided by the total number of Credits for all
Class Members.  (*Id.*).

- A portion of the Participating Class Member's Individual Settlement Award will
  be allocated to unpaid wages.  (Agreement ¶ 57).  The wage component of Each
  Individual Settlement Award will be reported on Form W-2 and Defendants,
  Plaintiffs, and Participating Class Members will be responsible for their own tax
  obligations.  (*Id.* ¶ 58).

- In exchange for the payments by Defendants, the Class and each Participating
  Class Member shall release and discharge Defendants and Released Parties from
  "any and all claims, judgment, liens, losses, debts, liabilities, demands,
  obligations, guarantees, penalties, costs, expenses, attorneys' fees, damages,
  indemnities, actions, causes of action, and obligations of every kind and nature
  in law, equity or otherwise, known or unknown, . . . occurring up to the
  execution of this Settlement Agreement and arising out of the dispute which is
  the subject of the Class Action or which could have been asserted in the Class
  Action based on the facts alleged."  (Agreement ¶ 60).

- "The Parties intend that this Agreement shall be binding on all Participating
  Class Members, whether or not they actually receive a payment pursuant to this
  Settlement Agreement."  (Agreement ¶ 61).

- Within 10 business days after the Preliminary Approval Order, Defendants will
  provide a "class list" and information about the Class Members, including their
  name, last known address and number of Qualifying Shifts worked, to the
  Claims Administrator and Class Counsel.  (Agreement ¶ 76).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 18-9224-MWF-SSx**                    **Date:  August 24, 2020**
Title:        Michelle Kendig, et al. v. ExxonMobil Oil Corp., et al.

- Within 14 calendar days after Defendants provide the Claims Administrator the class list referenced above, the Claims Administrator shall send a Notice of Settlement to all Class Members by regular U.S. Mail, postage prepaid and supplement with e-mail notice if feasible.  (Agreement ¶ 78(a)).  Any Notice of Settlement returned as undelivered shall be sent to the forwarding address affixed thereto, if any.  (*Id.*).  If no forwarding address is provided, the Claims Administrator will use a reliable computer search method to locate a current address.  (*Id.*).  If no current address is located, the Notice of Settlement for that individual will be deemed undeliverable.  (*Id.*).

- The Notice of Settlement shall, at a minimum, include the number of Qualifying Shifts worked by the Class Member up to the Preliminary Approval Date, a preliminary calculation of the amount the class member can expect to receive based on the number of Qualifying Shifts she or he worked, the contact information for Class Counsel and Defense Counsel, information informing Class Members of their right to opt out, and a statement that the Settlement Agreement may have preclusive effect.  (Agreement ¶ 78(b)).

- Class Members may opt out of the Class and be excluded from receiving any benefits under the Agreement by completing and mailing a written opt-out request to the Claims Administrator on or before the Notice Response Deadline, which is defined as 45 days of the initial date of mailing the Notice Packet to Class Members.  (Agreement ¶¶ 25, 78(c)).

- Within 35 business days of preliminary approval, the Notice Packet will be sent via first class mail to class members.  The Notice will inform potential class members of, among others, the terms of the Settlement Agreement and their right to opt out of the class.  (Agreement ¶ 21).

- If a Class Member disagrees with the number of Qualifying Shifts on the Notice of Settlement, he or she must complete and send a notice of dispute to the Claims Administrator with any supporting written documentation.  (Agreement ¶ 79).  To be considered, the notice of dispute and supporting written

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 18-9224-MWF-SSx                    Date:  August 24, 2020
Title:      Michelle Kendig, et al. v. ExxonMobil Oil Corp., et al.

documentation must be received by the Claims Administrator no later than thirty calendar days after the postmark date of the Notice of Settlement.  (*Id.*).  The Claims Administrator shall make the final determination regarding the dispute based on the written documentation submitted by the Class Member and any materials submitted by Class Counsel and Defense Counsel within 10 calendar days of receipt of the notice of dispute and supporting written documentation and no later than 40 calendar days after postmark date of the Notice of Settlement.  (*Id.*).  The Claims Administrator shall inform each Class Member of the final determination by a telephone call, followed by an email or regular U.S. Mail if no email address is available.  (*Id.*).

- The Claims Administrator shall create and maintain a website, which will include links to the Class Notice, Motions for Preliminary and Final Approval, and Motion for Attorneys' Fees as they become available, until the Effective Date.  (Agreement ¶ 81).

- At least 21 calendar days before the Final Approval Hearing, the Claims Administrator shall prepare a declaration of due diligence and proof of mailing with regard to the mailing of the Notice of Settlement and email (if email was deemed feasible), and any attempts by the Claims Administrator to locate the Class Members ("Due Diligence Declaration"), and provide it to Class Counsel and Defense Counsel for preparation to the Court.  (Agreement ¶ 82).  The Claims Administrator will attach to the Due Diligence Declaration a report showing the name of each individual who submitted a timely and valid opt-out. (*Id.*).

- Uncashed settlement checks will be awarded cy pres to Loyola Law School Workers' Rights Clinic.  (*Id.* ¶ 93).

- At the sole discretion of either Exxon or the TORC Defendants, if no more than 5% of the Class submits timely and valid requests for exclusion, this entire Settlement Agreement shall become voidable and unenforceable.  (Agreement ¶ 97).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 18-9224-MWF-SSx                 Date:  August 24, 2020**
Title:      Michelle Kendig, et al. v. ExxonMobil Oil Corp., et al.

## II.  **DISCUSSION**

Plaintiffs seek final approval of the Settlement Agreement and a $7,500 incentive award for each of the two named plaintiffs.  (Settlement Motion at 19). Plaintiffs also seek final approval of claims administration costs to be paid to the Claims Administrator, CAC Services, in the amount of $17,836.10.  (Settlement Motion at 2).  Plaintiffs' counsel seek attorneys' fees in the amount of $1,097,896, or 25% of the Gross Settlement Amount, and reimbursement of costs incurred in the amount of $7,607.77.  (Fee Motion at 17.)

### A.    **Final Approval of Class Settlement**

Before approving a class action settlement, Rule 23 of the Federal Rules of Civil Procedure requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2).  "To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (internal citation and quotation marks omitted) (applying the factors announced in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

"The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety."  *Staton*, 327 F.3d at 960 (quoting *Hanlon*, 150 F.3d at 1026).  "The involvement of experienced class action counsel and the fact that the settlement

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-9224-MWF-SSx                    Date:  August 24, 2020
Title:      Michelle Kendig, et al. v. ExxonMobil Oil Corp., et al.

agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair." *Linney v. Cellular Alaska P'ship*, Nos. C–96–3008 DLJ, C–97–0203 DLJ, C–97–0425 DLJ, C–97–0457 DLJ, 1997 WL 450064, *5 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234, 1234 (9th Cir. 1998). "In addition, the settlement may not be the product of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

Here, the Court is satisfied that the Agreement is not the product of collusion between the parties.  As noted in the Preliminary Approval Order, the parties attended a mediation session in August 2019 with T Warren Jackson. (Settlement Motion at 4) (citing Renick Decl. ¶7). The fact that the parties utilized an experienced mediator to reach the Settlement Agreement supports the notion that it was the product of arms-length negotiation.  Moreover, Class Counsel have extensive experience litigating consumer class actions.  (Renick Decl. ¶¶ 4-8 & Ex. 1 thereto; Young Decl. ¶¶ 3-8). Finally, the action was vigorously litigated on both sides, with each of the parties conducting substantial discovery over the course of this action.  (Renick Decl. ¶ 6). Accordingly, the arms-length nature of the negotiation resulting in the Agreement and the recommendation of experienced class action counsel support final approval.  *See Linney*, 1997 WL 450064, at *5.

Consideration of the *Hanlon* factors further supports final approval of the proposed settlement:

1.      **Strength of Plaintiff's case and risk, expense, complexity, and likely duration of further litigation**

When assessing the strength of a plaintiff's case, the Court does not reach "any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of this litigation." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989).  Here, the strength of plaintiff's case weighs in favor of approving settlement. Plaintiffs acknowledge that, despite the California Supreme Court's prohibition of on-duty and on-call rest periods in *Augustus v. ABM Security*

CIVIL MINUTES—GENERAL                                          11

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 18-9224-MWF-SSx                    Date:  August 24, 2020**
**Title:      Michelle Kendig, et al. v. ExxonMobil Oil Corp., et al.**

*Services Inc.*, 2 Cal. 5th 257, 211 Cal. Rptr. 3d 634 (2016), district courts have
diverged in their interpretation and application of that decision.  *See, e.g.*, *Bell v. Home
Depot U.S.A., Inc.*, No. 2:12-vc-02499 JAM-CKD, 2017 U.S. Dist. LEXIS 55442, at
*5 (E.D. Cal. Apr. 10, 2017) (concluding that *Augustus* does not affirmatively condone
on-premises rest breaks). Thus, litigating this case would require significant skill and
effort.

The complexity and likelihood of protracted litigation in this case also weigh in
favor of settlement approval. With class claims for violation of rest break and other
wage and hour laws, litigation can extend for many years due to the many hurdles
facing plaintiffs in class actions. (Renick Decl. ¶¶ 36-37). This matter is likely to be
highly contested and lengthy given the manner in which prior wage and hour class
actions involving similar classes of refinery workers were litigated. (Renick Decl.
¶¶ 38). Thus, on balance, these factors weigh in favor of final settlement approval.

### 2.      Amount offered in the Settlement Agreement

The Court concludes the $4,391,585 offered in the agreement is fair, reasonable,
and adequate.  The Court looks at "the complete package taken as a whole, rather than
the individual component parts" in making this determination.  *Officers for Justice*,
688 F.2d at 628.

The settlement here provides for the payment of $4,391,585.  (Renick Decl.
¶ 17). The net settlement to be distributed to the Class after the reduction of the LWDA
payment for PAGA penalties, attorneys' fees, costs, incentive awards, and
administration costs is $3,215,745.13.  (Johnson Decl. ¶ 16, and Ex. 2 thereto). The
average payment to the 338 Class Members with Qualifying Shifts is $9,514.04.  (*Id.*).
Thus, the financial benefit conferred upon the class is significant.

Additionally, based on Plaintiffs' assessment of damages and the review of
timecard and payroll data encompassing all shifts during the class period, the
settlement represents 56% of the damages incurred during the class period.  (Renick
Decl. ¶ 29).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-9224-MWF-SSx                    Date:  August 24, 2020
Title:      Michelle Kendig, et al. v. ExxonMobil Oil Corp., et al.

Accordingly, this factor weighs in favor of final settlement approval.

### 3.      Extent of discovery completed and stage of the proceedings.

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1239, 1242 (9th Cir. 1998).  Plaintiffs conducted an extensive investigation of Defendant's wage and hour practices, which included, among other things, conducting interviews of operators, reviewing employee handbooks, training materials and emergency protocol materials, as well as the payroll and timecard data of all Class Members produced by Defendant.  (Renick Decl. ¶ 8). The Court concludes that the parties had ample information with which to make informed settlement decisions.

Accordingly, this factor weighs in favor of final settlement approval.

### 4.      Experience and views of counsel

Plaintiff's counsel have extensive experience litigating wage-and-hour class actions on behalf of plaintiffs.  (Renick Decl. ¶¶ 4-8 & Ex. 1 thereto; Young Decl. ¶¶ 3-8). Counsel are of the opinion that "the settlement is a fair, reasonable, and adequate resolution of the claims of the Settlement Class and is preferable to continued litigation."  (Settlement Motion at 14-15) (citing Renick Decl. ¶¶ 30-38; Young Decl. ¶¶ 3-9).

Accordingly, this factor weighs in favor of final settlement approval.

### 5.      Reaction of the class members to the Settlement Agreement

The reaction of the Class Members has been positive and favors approval of the Settlement. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomm'cns Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528-29 (C.D. Cal. 2004); *see*

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-9224-MWF-SSx                    Date:  August 24, 2020
Title:      Michelle Kendig, et al. v. ExxonMobil Oil Corp., et al.

*also Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement with 45 objections out of 90,000 notices sent).

No Class Member has objected to the Settlement, and none have opted out. (Johnson Decl. ¶¶ 12-13). Two disputes were submitted, which have been resolved by the Claims Administrator after review of the data provided by the Class Member and Defendants.  (*Id.* ¶ 14).

Accordingly, this factor weighs in favor of final settlement approval.

**B.      Attorneys' Fees**

In the Ninth Circuit, there are two primary methods to calculate attorneys' fees: the lodestar method and the percentage-of-recovery method.  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 949 (citation omitted).  "The lodestar method requires 'multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer.'"  *Id.* (citation omitted).

"Under the percentage-of-recovery method, the attorneys' fees equal some percentage of the common settlement fund; in this circuit, the benchmark percentage is 25%."  *Id.* (citation omitted).  However, the "benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors."  *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).  "The Ninth Circuit has identified a number of factors that may be relevant in determining if the award is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases."  *Martin v. Ameripride Services, Inc.*, No. 08-cv-440-MMA, 2011 WL 2313604, at *8 (S.D. Cal. June 9, 2011) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002)).  The choice of "the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case."  *Vizcaino*, 290 F.3d at 1048.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-9224-MWF-SSx                    Date:  August 24, 2020
Title:      Michelle Kendig, et al. v. ExxonMobil Oil Corp., et al.

1.      **Class Counsel's fee request is reasonable under the percentage-of-recovery method**

The fee award requested by Class Counsel at the Ninth Circuit's 25% benchmark falls within reasonable ranges under both California and Ninth Circuit law and is supported by the *Vizcaino* factors.

### a)  Class counsel achieved an excellent result

With regard to the first *Vizcaino* factor, Class Counsel achieved an excellent result in this case. "The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *Lusby v. Gamestop Inc.*, 2015 WL 1501095, at *3 (N.D. Cal. Mar. 31, 2015).  "Compromise is inherent and necessary in the settlement process . . . . [E]ven if the relief afforded by the proposed settlement is substantially narrower than it would be if the suits were to be successfully litigated, this is no bar to a class settlement because the public interest may indeed be served by a voluntary settlement in which each side gives ground in the interest of avoiding litigation." *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 250, 110 Cal. Rptr. 2d 145 (2001) (quotations omitted). A settlement, therefore, need not obtain 100% of the damages and may, in fact, provide only a fraction of the recovery sought to be found fair and reasonable. *Linney*, 151 F.3d at 1234; *Wershba*, 91 Cal. App. 4th at 250.

Here, the net settlement to be distributed to the Class after the reduction of the LWDA payment for PAGA penalties, attorneys' fees, costs, incentive awards, and administration is $3,181,189.00.  (Renick Decl. ¶ 19). The average payment to each of the 335 Class Members is approximately $9,500 with a median of approximately $10,800.  (*Id.* ¶ 20).  Class members who worked the highest number of qualifying Shifts during the class period will receive as much as $20,636.79.  (*Id.*).  Thus, the financial benefit conferred upon the class is significant, and the settlement is an excellent result for the class.  (*Id.* ¶¶ 19-21).

Moreover, the settlement is supported by the class representatives and the union that represents many of the workers in this case, and, to date, no class members have objected to the Settlement Agreement's provisions.  (Young Decl. ¶¶ 7, 18).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-9224-MWF-SSx                    Date:  August 24, 2020
Title:      Michelle Kendig, et al. v. ExxonMobil Oil Corp., et al.

> **b) Class Counsel litigated the case on a contingency basis and faced considerable risk.**

The risk of further litigation and contingent nature of the fee and the financial burden, the second and fifth *Vizcaino* factors, favor approval of the requested fee award. *See In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995).

Plaintiffs faced a considerable risk of further litigation here.  Plaintiffs filed the case following the California Supreme Court's decision in *Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257 (2016).  While Plaintiffs believed that the decision provided clear guidance regarding employer's rest break obligations under California law and confirmed Defendants' failure to provide its operators with lawful rest breaks, district courts have since diverged in their interpretation and application of the decision.  *See, e.g., Bell v. Home Depot U.S.A., Inc.*, No. 2:12-cv-02499 JAM-CKD, 2017 U.S. Dist. LEXIS 55442, at *5 (E.D. Cal. Apr. 10, 2017) (concluding *Augustus* not applicable because the court did not consider an on-premises rest break policy which does not require employees to remain on call).

Indeed, with class claims for violation of rest break and other wage and hour laws, litigation can extend for many years due to the many hurdles facing plaintiffs in class actions.  (*See., e.g.*, Renick Decl. ¶¶ 28-29 (class actions involving overtime, living wage, and/or meal and rest break violations litigated five years, six years, and more than 10 years before resolving)).

Second, the fact that Class Counsel litigated this case on a contingency fee basis and has foregone payment since the outset of the litigation supports the percentage sought in the instant motion.  (Renick Decl. ¶ 27; Young Decl. ¶ 17). "Courts are loathe to penalize experienced counsel for efficient representation under contingency agreements." *Sproul v. Astrue*, 2013 U.S. Dist. LEXIS 12667, at *6 (S.D. Cal. Jan. 30, 2013). "Courts consistently recognize that the risk of non-payment or reimbursement of expenses is a factor in determining the appropriateness of counsel's fee award." *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *68 (C.D. Cal. June 10, 2005).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-9224-MWF-SSx                    Date:  August 24, 2020
Title:      Michelle Kendig, et al. v. ExxonMobil Oil Corp., et al.

### c)  The skill and quality of the work performed by class counsel merits approval of the requested fee award.

The experience, ability, and quality of Class Counsel's work, the third and fourth *Vizcaino* factors, support the requested fee award.  Class Counsel in this case has extensive experience successfully litigating wage-and-hour class actions, as well as other types of employment actions.  (Renick Decl. ¶¶ 4-8 & Ex. 1 thereto; Young Decl. ¶¶ 3-8).  Mr. Renick and Ms. Dai at Hadsell Stormer Renick & Dai as well as Mr. Young at Gilbert & Sackman have been recognized for their skill and expertise in the field of employment and class action litigation.  (*Id.*).  Moreover, both firms have extensive experience litigating wage and hour claims on behalf of oil refinery operators.  (Renick Decl. ¶ 30 & Ex. 1; Young Decl. ¶¶ 5, 7).

### d)  The amount requested to compensate class counsel is reasonable in comparison to awards in similar cases

The final *Vizcaino* factor – comparable awards in similar cases – supports Class Counsel's request for 25% of the common fund. Federal courts "have consistently approved of attorney fee awards over the 25% benchmark," specifically at a rate of "30% or higher." *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *18 n.12 (C.D. Cal. June 10, 2005).  This range is consistent with California law.  *See Laffitte*, 231 Cal. App. 4th at 878 (one-third of the fund); *In re Consumer Privacy Cases*, 175 Cal. App. 4th at 557 n.13 (one third of the recovery); *Chavez*, 162 Cal. App. 4th at 66 (same).  In fact, fifty percent has generally been accepted as the "upper limit, with 30-50% commonly being awarded in cases in which the common fund is relatively small." *Martin v. AmeriPride Servs.*, 2011 U.S. Dist. LEXIS 61796, at *22-*23 (S.D. Cal. June 9, 2011).

Under these circumstances, where Class Counsel achieves a positive result prior to extensive motion practice or class certification, courts in this district and others of this Circuit have consistently found 25% of the fund to be an appropriate fee award. *See, e.g.*, *Navarro v. Servisair*, No. C 08-02716 MHP, 2010 U.S. Dist. LEXIS 41081, at *10 (N.D. Cal. Apr. 26, 2010) (determining that "a 25% fee [was] consistent with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-9224-MWF-SSx                    Date:  August 24, 2020
Title:       Michelle Kendig, et al. v. ExxonMobil Oil Corp., et al.

the Ninth Circuit benchmark" where class action settlement reached "relatively quickly
without litigating any motions for summary judgment or class certification"); *Bravo v.
Gale Triangle, Inc.*, No. CV 16-03347 BRO (GJSx), 2017 U.S. Dist. LEXIS 77714, at
*47-*48 (C.D. Cal. Feb. 16, 2017) (concluding that award of standard 25% fee was
appropriate where settlement "was a favorable result" "but not exceptional" and
"reached after two mediations and before the case had reached class certification or
otherwise participated in motion practice").

### 2.  Class Counsel's fee request is also reasonable under the Lodestar Method.

Under both California and Ninth Circuit law, a lodestar cross-check on a
percentage fee is acceptable.  *Laffitte*, 1 Cal. 5th at. at 506; *Vizcaino*, 290 F.3d at 1043.
In addition, the court "may increase or decrease [the lodestar] amount by applying a
positive or negative 'multiplier' to take into account a variety of other factors,
including the quality of the representation, the novelty and complexity of the issues,
the results obtained, and the contingent risk presented." *Lealao v. Beneficial Cal., Inc.*,
82 Cal. App. 4th 19, 26, 97 Cal. Rptr. 2d 797 (2000); *see Hanlon v. Chrysler Corp.*,
150 F.3d 1011, 1029 (9th Cir. 1998) (identifying same factors).

### a)  Class Counsel's rates are reasonable.

In order to calculate the lodestar, a court must determine the reasonable hourly
rate for the services rendered by class counsel.  *Consumer Privacy Cases*, 175 Cal.
App. 4th 545, 556 (2009).  A reasonable rate is typically based upon the prevailing
market rate in the community for similar work performed by attorneys of comparable
skill, experience, and reputation.  *Heritage Pac. Fin., LLC v. Monroy*, 215 Cal. App.
4th 972, 1009 (2013).

As set forth in the supporting declarations of counsel, the hourly rates reflected
in the charts below are consistent with the attorneys' and paralegals' skill and
experience and reflect the prevailing market rates.  (Renick Decl. ¶¶ 5-9, 33-43; Young
Decl. ¶¶ 3-9, 14).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 18-9224-MWF-SSx                Date:  August 24, 2020**
Title:      Michelle Kendig, et al. v. ExxonMobil Oil Corp., et al.

Hadsell Stormer Renick & Dai LLP

|                               | Hours | Hourly Rate | Lodestar     |
| ----------------------------- | ----- | ----------- | ------------ |
| Randy Renick (Partner)        | 183.7 | $875        | $160,737.50  |
| Cornelia Dai (Partner)        | 97.5  | $775        | $75,562.50   |
| Elizabeth Song (Associate)    | 43.2  | $450        | $19,440.00   |
| Total                         | 344.8 |             | $261,860.00  |

Gilbert & Sackman

|                               | Hours | Hourly Rate | Lodestar     |
| ----------------------------- | ----- | ----------- | ------------ |
| Joshua Young (Partner)        | 150.8 | $750        | $113,100.00  |
| Mitzi Marquez (Associate)     | 9.9   | $325        | $3,217.50    |
| Total                         | 160.7 |             | $116,317.50  |

(Renick Decl. ¶ 24; Young Decl. ¶ 12).  The requested rates are also consistent with
and comparable to rates approved by courts in this district and in cases similarly filed
by counsel against other oil refineries for rest break violations.  (Renick Decl. ¶¶ 33-
43; Young Decl. ¶ 14).

**b) Plaintiffs' lodestar amount for hours expended is reasonable.**

The combined lodestar for the two firms at the time of the filing of this motion is
$378,177.50.  Plaintiffs' counsel expects to spend an additional 100 hours meeting
with class members, preparing the motion for final approval, resolving claims, working
with the Administrator to ensure that the settlement amount is properly allocated to
class members and ensuring that the settlement amount is distributed to each class
member.  (Renick Decl. ¶ 17; Young Decl. ¶¶ 16, 19).  The additional hours represent
a lodestar of approximately $60,000, resulting in a total lodestar of $438,177.50.
(Renick Decl. ¶ 17).  The court determines that the number of hours expended by the
two firms and the lodestar amount are both reasonable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-9224-MWF-SSx                    Date:  August 24, 2020
Title:       Michelle Kendig, et al. v. ExxonMobil Oil Corp., et al.

### c) An upward multiplier is appropriate under the circumstances of this case.

Based on the total lodestar of $438,177.50, the lodestar cross-check requires a 2.5 multiplier to be equivalent to the fee amount sought here.  An upward multiplier is supported by the factors California and federal courts consider for this determination, such as (1) the quality of representation, (2) the novelty and complexity of the issues, and (3) the results obtained, and the continent risk presented. *See Lealao*, 82 Cal. App. 4th at 26; *see Hanlon*, 150 F.3d at 1029.  Here, Class Counsel achieved a very successful result with a relatively large recovery for individual class members; the average payment to each of the 335 Class Members is approximately $9,500.  (Renick Decl. ¶ 20).  Further, it was likely that the action would be highly contested and lengthy given the inherently complex nature of class actions and the lengthy settlement negotiations, which were finalized over the course of several months.  In addition, this case was taken on a contingency basis by experienced and well-regarded counsel. (Renick Decl. ¶ 27, Young Decl. ¶ 17).

For these reasons, the Court grants Plaintiffs' request for a fee award of 25 percent of the $4,391,585 settlement fund, supported here by a lodestar cross-check with a 2.5 multiplier.

### 3.    The Costs that Class Counsel Seek for Reimbursement Are Reasonable.

Class Counsel also seeks reimbursement of $7,607.77 in costs incurred in prosecuting this case.  (Renick Decl. ¶¶ 44-45; Young Decl. ¶¶ 20-27).  The Settlement Agreement provides for the reimbursement of reasonable costs.  (Renick Decl. ¶ 11). Plaintiffs' costs are set forth in detail in the declarations of Class Counsel.  (*Id.* ¶ 44; Young Decl. ¶¶ 20-27).  "There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund."  *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-9224-MWF-SSx                    Date:  August 24, 2020
Title:      Michelle Kendig, et al. v. ExxonMobil Oil Corp., et al.

The costs sought by Class Counsel are reasonable and were necessarily incurred in order to advance the litigation for the benefit the class. The court grants Plaintiffs' request for reimbursement of costs in the amount of $7,607.77.

### C.    Incentive Award

Class Counsel and Named Plaintiffs request an Incentive Award of $7,500 for each of the two Named Plaintiffs.  (Agreement ¶ 36).  This amount is reasonable, as incentive awards typically range between $2,000 and $10,000.  *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) (collecting cases).  Furthermore, the total $15,000 payment to the two Named Plaintiffs would constitute less than 0.3% of the gross settlement amount.  This percentage is well in line with those found to be acceptable in other class actions.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463 (approving incentive award of $5,000 to two plaintiff representatives in $1.75 million settlement, comprising 0.56% of the total settlement amount); *Sandoval v. Tharaldson Employee Mgmt, Inc.*, 2010 WL 2486346, at *10 (C.D. Cal. June 15, 2010) (awarding $7,5000 incentive payment to named plaintiff, comprising 1% of gross settlement amount).

### D.    Administrative Costs

Plaintiffs also request final approval of claims administration costs to be paid to Claims Administrator CAC Services in the amount of $17,836.10.  (Johnson Decl. ¶ 17, and Ex. 3 thereto).  "Courts regularly award administrative costs associated with providing notice to the class."  *Bellinghausen*, 306 F.R.D. at 266.  The Court determines the amount requested is fair and reasonable given that the Claims Administrator promptly and properly distributed the Class Notice to Class Members and has performed its duties in accordance with the Settlement terms.  (Johnson Decl. ¶¶ 4- 16).

Notice was provided to settlement class members in the manner approved by the Court in the Preliminary Approval Order.  Specifically, the court-appointed Claims Administrator, CAC Services, mailed the Notice to the Settlement Class Members.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 18-9224-MWF-SSx                    Date:  August 24, 2020**
Title:      Michelle Kendig, et al. v. ExxonMobil Oil Corp., et al.

(Settlement Motion at 8) (citing Declaration of Nancy A. Johnson ("Johnson Decl.")
¶¶ 6.a.-6.h. (Docket No. 48-7). The Notice provided to the class included detailed
information regarding the following: the nature of the case; the definition of the class;
the terms of the Settlement; a class member's rights with respect to participation in the
Settlement and the consequences of exercising those rights; the total settlement
amount, including the portions of the total settlement amount allocated to PAGA
penalties and for payment of service awards, attorneys' fees and costs, and
administrative costs; and the specific formula for calculating each member's claim.
(*Id.*) (citing Johnson Decl., Ex. B.)

The Notice sent to each class member was also customized to include the
estimated amount each Class Member should expect to receive and the total number of
Qualifying Shifts worked by that Class Member during the class period. (*Id.*) (citing
Johnson Decl. ¶ 6.c., Ex. 1). Therefore, the information provided in the Notice exceeds
that which is required.  *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012);
*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009).

The Claims Administrator carried out and fully complied with the plan of
dissemination approved by the Court.  The Claims Administrator determined from the
data provided by Defendants on May 26, 2020, that there were 335 Settlement Class
Members, and sent the Notice to those Class Members on June 9, 2020.  (Settlement
Motion at 8-9) (citing Johnson Decl. ¶¶ 6.a.-6.d.). That same day, the Claims
Administrator created a case website and posted the notice of settlement and other
relevant court documents. (*Id.* at 9) (citing Johnson Decl. at ¶¶ 6.e.).  Plaintiffs' Motion
for Attorneys' Fees and Reimbursement of Costs and supporting documents were then
posted on the case website on June 25, 2020. (*Id.*) (citing Johnson Decl. at ¶ 6.f.).  On
July 9, 2020, Defendants provided the Claims Administrator information for three
additional Settlement Class Members, and the Claims Administrator promptly sent out
the Notice to the three that same day. (*Id.*) (citing Johnson Decl. at ¶¶ 6.g.-6.h.)

Of the total 338 Notices mailed (i.e., 335 Notices mailed on May 26, 2020, and
additional three mailed on July 9, 2020), two were returned by the United States Post
Office with a forwarding address and two new addresses were provided by Class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-9224-MWF-SSx                    Date:  August 24, 2020
Title:      Michelle Kendig, et al. v. ExxonMobil Oil Corp., et al.

Members. The Claims Administrator updated its class members list with the updated information, and these notices were re-mailed to the new addresses. (*Id.*) (citing Johnson Decl. at ¶¶ 8- 9).  Nine Notices were returned without updated addresses. The Claims Administrator was able to locate new addresses for four and re-deliver those Notices. (*Id.*) (citing Johnson Decl. at ¶ 10). Thus, the Court determines that the Notice Plan provided the best notice that is practicable under the circumstances as notice was provided to each Class Member who could be identified based on Defendants' records.

On June 25, 2020, the Claims Administrator posted to the case website Plaintiffs' Notice and Motion for Attorneys' Fees and Reimbursement of Costs and supporting papers. (*Id.*) (citing Johnson Decl. at ¶ 6.f).  This posting, 29 days prior to the objection/opt-out deadline of July 24, 2020, was consistent with the Court's order and satisfies the standard for notice set by the Ninth Circuit in *Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*, 618 F.3d 988 (9th Cir. 2010), which requires that a motion for attorneys' fees be made available to class members prior to the deadline for objections in order that they have a full and fair opportunity to contest the fee sought.

### E.    Final Certification of the Class for Settlement Purposes

The Court reaffirms its determination in the order granting preliminary approval that certification of the class for settlement is proper under Rule 23(b)(3). (Order Re: Plaintiff's Motion for Preliminary Approval of Settlement Agreement (Docket No. 43)). The numerosity, commonality, typicality, and adequacy of representation prerequisites under Rule 23(a) are met, and common questions of law and fact predominate under Rule 23(b)(3). (*Id.* at 19).

///
///
///
///
///
///

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 18-9224-MWF-SSx**                    **Date:  August 24, 2020**
Title:     Michelle Kendig, et al. v. ExxonMobil Oil Corp., et al.

## III.    **CONCLUSION**

For the reasons above, the Court finds the Agreement and Request for Fees and Costs to be fair, reasonable, and adequate.  The Settlement Motion is therefore **GRANTED** and the Agreement is finally **APPROVED**. The Fee Motion is also **GRANTED.**  A separate judgment shall issue.

IT IS SO ORDERED.